[No. B177747. Second Dist., Div. Three. Nov. 29, 2006.]

RALPH CASSADY, Plaintiff and Appellant, v.
MORGAN, LEWIS & BOCKIUS LLP, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4 of the Discussion.

COUNSEL

Law Offices of Baird A. Brown, Baird A. Brown; Greines, Martin, Stein & Richland and Marc J. Poster for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Andrea Sheridan Ordin, Salvatore Picariello and Thomas M. Peterson for Defendant and Appellant.

OPINION

**ALDRICH, J.—**

## INTRODUCTION

Appellant Morgan, Lewis & Bockius LLP (hereinafter Morgan Lewis) appeals from the trial court's grant of respondent Ralph Cassady's motion for a new trial on his statutory and common law indemnity claims. Cassady, an attorney, performed legal services for a client, Rallie P. Rallis, for over 20 years. During that period, Cassady practiced law with several firms and in a variety of capacities. For a 13-month period, Cassady was employed as of counsel by Morgan Lewis. Years later, Rallis sued Cassady, Morgan Lewis, and other firms and attorneys with whom Cassady had been affiliated, for a variety of claims including professional negligence, premised on numerous aspects of Cassady's and those entities' representation occurring over a multiyear period. Morgan Lewis provided a defense for several other attorneys, but not for Cassady. After incurring legal fees for his defense, Cassady sought indemnity from Morgan Lewis under Labor Code section 2802,[1] which requires employers to indemnify employees for expenses or losses incurred in direct consequence of the discharge of their duties. Morgan Lewis prevailed on a summary judgment motion that disposed of Cassady's claims, but the trial court subsequently reversed course and granted Cassady a new trial. Morgan Lewis appeals from that ruling.

We affirm the trial court's grant of a new trial. Under section 2802, an employer must indemnify an employee for attorney's fees and costs incurred in defending a third party lawsuit, where such expenses are necessary and the lawsuit is based on the employee's conduct within the course and scope of his or her job duties. Because proof that the defense costs were incurred by the employee in direct consequence of the discharge of his or her duties is an element of the claim, the employee has the burden to prove the conduct on

---

[1] All further undesignated statutory references are to the Labor Code.

which he or she was sued arose in the course and scope of the employment. To meet that burden on the somewhat unique facts of this case, Cassady bears the burden to prove which expenses he incurred as a result of performance of his duties with Morgan Lewis as opposed to other employers. However, Morgan Lewis's summary judgment motion failed to show that Cassady lacked, or could not obtain, sufficient evidence to prove this element of his claim. In the unpublished portion of the opinion, we likewise conclude Morgan Lewis failed to meet its burden to prove Cassady lacked evidence to establish his common law indemnity claim. Therefore, the trial court appropriately granted the motion for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### 1. *The Rallis action.*

Attorney Cassady served as legal counsel for Rallis and for various corporations and business entities in which Rallis was an officer, director, or shareholder, from 1969 until November 1994. During that period, Cassady practiced with several different law firms, including Morgan Lewis,[3] and was Rallis's principal contact at each firm. As of January 1987, Cassady, practicing as Cassady Corporation, was a partner of Hahn Cazier. In February 1987, substantially all the attorneys and employees of Hahn Cazier joined the Morgan Lewis firm. Cassady was employed by Morgan Lewis as of counsel for approximately 13 months, from February 1, 1987, through March 4, 1988.

On January 4, 1995, Rallis sued Cassady, Morgan Lewis, and other firms and attorneys with whom Cassady had practiced while representing Rallis (the Rallis action). Rallis alleged legal malpractice, breach of fiduciary duty, breach of contract, negligent and intentional misrepresentation, and equitable indemnity, for alleged acts of professional negligence committed by Cassady

[2] These facts are either undisputed, alleged in the complaint and not controverted by evidence in support of the summary judgment motion, or supported by evidence in opposition to the motion.

[3] From prior to January 1975 through July 5, 1979, Cassady was a partner of Hahn Cazier & Leff.

From July 5, 1979, through January 31, 1987, Cassady was employed by the Cassady Corporation, as follows. From July 5, 1979, through January 31, 1987, Cassady Corporation practiced law with, and was a partner of, Hahn, Cazier & Leff (which was also known by other names, including Hahn, Cazier & Smaltz, during that period, hereinafter Hahn Cazier.)

From February 1, 1987, through March 4, 1988, Cassady was employed by Morgan Lewis as of counsel.

From March 5, 1988, through July 31, 1989, Cassady Corporation and the Raymond M. Klein Law Corporation practiced law as Cassady & Klein. From August 1, 1989, through July 13, 1993, Cassady Corporation was of counsel to Davis Wright Tremaine. From July 13, 1993, through December 31, 1996, Cassady Corporation and Raymond M. Klein Law Corporation again practiced as Cassady & Klein.

and the other defendants between approximately 1982 through 1994. Some of the conduct upon which Rallis's claims were premised was alleged to have occurred while Cassady was employed by Morgan Lewis; some was alleged to have occurred while Cassady practiced with other law firms.

Rallis's revised second amended complaint alleged that Cassady, and the various firms with whom Cassady was associated at the applicable time periods, had advised and represented Rallis in regard to the formation, acquisition, and affairs of various business entities, including Mark Industries, Inc., American Hi-Lift Corporation of California, and Mark Equipment Center of South Florida (MEC-SF). Cassady was also alleged to have been a co-shareholder, officer and director in various businesses which Rallis formed or acquired.

The Rallis complaint further alleged that in 1984, MEC-SF terminated Edward Moloney, the company's general manager and a 10 percent stock-holder. During the period 1984 through 1987, Cassady precipitated Moloney's lawsuit by mishandling negotiations and failing to keep Rallis apprised of the risks and progress of the matter. Rallis also alleged professional negligence and related claims in regard to a plethora of other transactions, including: the acquisition of a competitor in 1984; the sale of a property to a corporate officer in 1984; the sale of MEC-SF's assets in 1986 and the subsequent windup of its affairs; the handling of distributions to MEC-SF stockholders in or after 1986; a 1988 stock sale and indemnity agreement; a 1990 Mark Industries transaction; and a 1993 proposed stock offering.

### 2. *Defense and resolution of the Rallis action.*

Morgan Lewis retained the law firm of Sheppard Mullin to defend it and certain former Hahn Cazier partners in the Rallis action. Morgan Lewis did not provide a defense to Cassady, who had already retained his own counsel, Baird A. Brown. Brown also defended Cassady Corporation, Cassady & Klein, Ray Klein, and Klein Corporation in the Rallis action. Morgan Lewis subsequently advised Cassady that it would not indemnify Cassady or pay his defense fees.

By 1999, all Rallis's claims had been dismissed either voluntarily, on demurrer, or through summary adjudication and summary judgment. The summary judgments were granted on statute of limitations grounds. Rallis appealed. This court affirmed in part and reversed in part. (*Rallis v. Cassady* (Oct. 24, 2000) B127047, B131724, opn. ordered nonpub. Jan. 24, 2001.) We reversed the judgments in favor of Cassady, Cassady Corporation, Cassady & Klein, and another defendant. We affirmed the judgments in favor of Morgan

Lewis and Hahn Cazier. Cassady and the other remaining defendants entered into a settlement agreement with Rallis, and the case was dismissed with prejudice.

### 3. *The parties' indemnity claims.*

In July 2002, Cassady sued Morgan Lewis for indemnity, under both section 2802 and the common law. Cassady sought fees and costs of approximately $280,000, plus interest, and the attorney's fees and costs incurred in enforcing his section 2802 rights. (§ 2802, subd. (c).) Cassady's indemnity demand included defense costs arising from his alleged conduct both at Morgan Lewis and while a partner at Hahn Cazier.

Morgan Lewis cross-complained against Cassady and certain other defendants in the Rallis action, seeking (1) contractual indemnity based upon a 1987 agreement between Cassady and Morgan Lewis, (2) reimbursement under section 2865,[4] and (3) declaratory relief. Morgan Lewis sought approximately $367,000 in fees and costs it incurred defending the Rallis action.

Cassady moved for summary adjudication on Morgan Lewis's section 2865 indemnity claim. The trial court denied the motion.

Morgan Lewis moved for summary judgment against Cassady, on the ground Cassady could not establish essential elements of his claims. Morgan Lewis contended, in regard to Cassady's section 2802 indemnity claim, that: (1) Cassady did not possess, and could not reasonably obtain, evidence demonstrating which defense costs he necessarily expended in direct consequence of the discharge of his duties while at Morgan Lewis; and (2) Cassady could not establish Morgan Lewis's liability under section 2802 based solely on what Rallis alleged Cassady did while employed at Morgan Lewis. Morgan Lewis argued that Cassady's common law indemnity claim, like the section 2802 claim, "must fail because Cassady does not possess and cannot reasonably obtain the needed evidence."

Cassady responded, inter alia, that "the law is that [Morgan Lewis] is responsible for all of Cassady's fees and costs in the Rallis action except to the extent that [Morgan Lewis] can provide a reasonable basis for apportioning the fees and costs." Cassady conceded that certain transactions about which Rallis had complained were not indemnifiable because they occurred when Cassady was not employed at Morgan Lewis. Cassady estimated that

---

[4] Section 2865 provides: "An employee who is guilty of a culpable degree of negligence is liable to his employer for the damage thereby caused to the employer. The employer is liable to the employee if the service is not gratuitous, for the value of the services only as are properly rendered."

the cost of defending those actions was $10,000. According to Cassady, the remaining attorney's fees he incurred defending the Rallis action amounted to approximately $280,000.

The trial court granted Morgan Lewis's summary judgment motion on the grounds advanced by Morgan Lewis.

The trial court then conducted a bench trial on Morgan Lewis's cross-complaint, and ruled in Cassady's favor.[5]

### 4. *Cassady's motion for a new trial.*

Cassady moved, pursuant to Code of Civil Procedure section 657, for a new trial on the ground the trial court committed legal error when granting Morgan Lewis's summary judgment motion.[6] (Code Civ. Proc., § 657, subd. (7).) The trial court granted the motion, concluding it had erred when it granted Morgan Lewis summary judgment. In its oral ruling, the court stated that while Cassady had the burden to prove his damages were necessary and in direct consequence of the discharge of his duties during the time he worked with Morgan Lewis, a triable issue of fact existed with regard to how attorney's fees should be apportioned. The trial court's minute order granting the motion did not contain a specification of its reasons for decision.

Morgan Lewis timely appealed the new trial order. (Code Civ. Proc., § 904.1, subd. (a)(4).) Cassady filed a protective cross-appeal from the portion of the judgment granting summary judgment to Morgan Lewis.

### CONTENTIONS OF THE PARTIES

Morgan Lewis contends Cassady had the burden to prove what portion of expenses he necessarily incurred in direct consequence of his employment with Morgan Lewis, and to distinguish expenses attributable to the time he practiced law elsewhere. The trial court's original grant of summary judgment was proper, Morgan Lewis asserts, because it was undisputed that Cassady did not possess, and could not reasonably obtain, evidence to make such an apportionment.

Cassady urges that apportionment of indemnifiable expenses is not required because at least some of his defense costs arose from the discharge of his duties while at Morgan Lewis, and claims arising from his representation of

---

[5] That ruling is not at issue here.

[6] Although Cassady cursorily mentioned several other grounds in his moving papers below, his argument on appeal is limited to error in law.

Rallis while employed at Morgan Lewis and at other firms were factually intertwined. Further, Cassady asserts that if apportionment is required, it should be Morgan Lewis's burden because Morgan Lewis refused to provide his defense. Finally, assuming he bears the burden of apportioning fees, Cassady urges that Morgan Lewis's summary judgment motion was wrongly granted because Morgan Lewis failed to establish Cassady does not possess, and cannot reasonably obtain, the evidence necessary to make such an apportionment.

## DISCUSSION

### 1. *Standard of review.*

A decision granting summary judgment may be challenged by a motion for a new trial. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 858 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Scott v. Farrar* (1983) 139 Cal.App.3d 462, 467 [188 Cal.Rptr. 823].) A new trial may be granted under Code of Civil Procedure Code section 657, subdivision 7, if the original ruling was erroneous as a matter of law. (*Ramirez v. USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757].) Normally, an order granting a new trial is reviewed for abuse of discretion. (*Aguilar v. Atlantic Richfield Co., supra*, at p. 859; e.g., *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 187, 194 [26 Cal.Rptr.3d 790].) However, as Morgan Lewis points out, the trial court's order granting the new trial was procedurally deficient. Code of Civil Procedure section 657 requires that the trial court state the grounds and reasons for its grant of a new trial in writing, either in the order itself or in a separate statement filed within 10 days. (Code Civ. Proc., § 657; *Thompson v. Friendly Hills Regional Medical Center* (1999) 71 Cal.App.4th 544, 549 [84 Cal.Rptr.2d 51]; *Stewart v. Truck Ins. Exchange* (1993) 17 Cal.App.4th 468, 484 [21 Cal.Rptr.2d 338].) The failure to supply an adequate specification of reasons or grounds renders the new trial order defective, but not void. (*Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 896, 900 [215 Cal.Rptr. 679, 701 P.2d 826]; *Thompson v. Friendly Hills Regional Medical Center, supra*, at p. 550.) Under such circumstances the party seeking a new trial has the burden to sustain his or her position on appeal. (*Sanchez-Corea v. Bank of America, supra*, at p. 900; *Thompson, supra*, at p. 550.) Here, the trial court did not prepare the mandated specification of reasons. Accordingly, Cassady has the burden to sustain his position on appeal.

The ruling at issue is the grant of Morgan Lewis's summary judgment motion. "An order granting summary judgment, of course, is reviewed independently." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 860; see *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4

Cal.Rptr.3d 103, 75 P.3d 30]; *State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1034–1035 [6 Cal.Rptr.3d 441, 79 P.3d 556].) Summary judgment should be granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Kahn v. East Side Union High School Dist., supra,* at pp. 1002–1003; *Tucci v. Club Mediterranee* (2001) 89 Cal.App.4th 180, 185 [107 Cal.Rptr.2d 401].)

### 2. *Section 2802.*

Section 2802 provides, in pertinent part, "(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. [¶] . . . [¶] (c) For purposes of this section, the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

■ Section 2802 thus requires an employer to indemnify an employee who is sued by third persons for conduct in the course and scope of his or her employment, including paying any judgment entered and attorney's fees and costs incurred in defending the action. (*Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1100 [93 Cal.Rptr.2d 425]; *Douglas v. Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449, 461 [123 Cal.Rptr. 683]; *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 57 [1 Cal.Rptr.2d 808]; *Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 647 [13 Cal.Rptr.3d 315]; *Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 177 [32 Cal.Rptr.2d 574].) As long as the employee is acting within the scope of his or her employment, the right to indemnity is not dependent upon a finding that the underlying action was unfounded. (*Jacobus v. Krambo Corp., supra,* at pp. 1100–1101; but see *O'Hara v. Teamsters Union Local #856* (9th Cir. 1998) 151 F.3d 1152, 1158.)

■ The elements of a section 2802, subdivision (a) cause of action, as delineated by the statutory language, are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary. The second element, at issue here, is met if "the conduct defended against was within the course and scope of employment." (*Jacobus v. Krambo*

*Corp., supra,* 78 Cal.App.4th at p. 1101; see *Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1583 [38 Cal.Rptr.2d 849].) "In determining whether for purposes of indemnification an employee's acts were performed within the course and scope of employment, the courts have looked to the doctrine of respondeat superior. [Citations.] [¶] Under that doctrine, an employer is vicariously liable for risks broadly incidental to the enterprise undertaken by the employer—that is, for an employee's conduct that, in the context of the employer's enterprise, is 'not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.]' [Citations.]" (*Jacobus v. Krambo Corp., supra,* at p. 1101; see also *Plancarte v. Guardsmark, supra,* 118 Cal.App.4th at p. 648; *Devereaux v. Latham & Watkins, supra,* 32 Cal.App.4th at pp. 1583–1584.) An employee's conduct may fall within the scope of his or her employment "even though the act does not benefit the employer, even though the act is willful or malicious, and even though the act may violate the employer's direct orders or policies." (*Jacobus v. Krambo Corp., supra,* at p. 1102.)

■ Whether an employee's acts are within the scope of employment is ordinarily a question of fact, but may be resolved as a question of law when the material facts are undisputed and no conflicting inferences are possible. (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1019 [47 Cal.Rptr.2d 478, 906 P.2d 440]; *Jacobus v. Krambo Corp., supra,* 78 Cal.App.4th at p. 1103.)

Here, unlike in the typical section 2802 case, there is no dispute that Cassady's representation of Rallis while at Morgan Lewis was within the scope of his employment. Instead, the question is the application of section 2802 when the defense costs arose from Cassady's alleged conduct spanning a period during which he was employed by several different successive employers.

a. *Morgan Lewis must indemnify Cassady, if at all, only for defense costs arising from Cassady's representation of Rallis while employed by Morgan Lewis.*

■ When interpreting a statute, we look to the plain meaning of the statute's words, which are generally the most reliable indicator of the Legislature's intent. (*Stephens v. County of Tulare* (2006) 38 Cal.4th 793, 801–802 [43 Cal.Rptr.3d 302, 134 P.3d 288]; *Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].) The plain

language of section 2802 makes clear that Morgan Lewis is responsible for indemnifying Cassady, if at all, only for those defense costs arising from aspects of Cassady's representation of Rallis undertaken during the period Cassady was employed by Morgan Lewis. Defense costs arising from Cassady's conduct when he was practicing law elsewhere do not meet the statutory criteria: They simply cannot have been incurred in direct consequence of the discharge of duties for Morgan Lewis. Requiring Morgan Lewis to indemnify Cassady for costs of defense based on alleged malpractice while he was working at other firms would contradict the express scope of the indemnity provided for by section 2802. Therefore, we necessarily reject Cassady's theory that Morgan Lewis must indemnify him for nearly all his defense costs because defense of the work-related claims cannot easily be disentangled from defense of the other claims.

Cassady, however, contends that, where claims involve a common core of facts and are based on related legal theories, attorney's fees need not be apportioned. (See, e.g., *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [158 Cal.Rptr. 1, 599 P.2d 83] ["Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed"]; *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687 [98 Cal.Rptr.2d 263] ["Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units"]; *Liton Gen. Engineering Contractor, Inc. v. United Pacific Insurance* (1993) 16 Cal.App.4th 577, 588 [20 Cal.Rptr.2d 200] [where liability of two parties was "so factually interrelated that it would have been impossible to separate the activities involved in [an] arbitration into compensable and noncompensable time units," allocation was not required]; *Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493 [209 Cal.Rptr. 623] ["Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories"].)

■ But none of these cases assist Cassady, in that they did not involve application of section 2802. Section 2802 is not an attorney's fees statute; it is an indemnity statute. It expressly conditions the right to indemnity on a showing that the expenditures arose as a direct consequence of the discharge of the employee's duties. If the expenditures did not arise from discharge of the employee's duties, indemnity under section 2802 cannot be had. (See *Douglas v. Los Angeles Herald-Examiner, supra*, 50 Cal.App.3d at p. 464.)

On the other hand, where Cassady incurred fees on an issue common to defense of Rallis's claims arising *both* from periods he was and was not employed by Morgan Lewis, indemnity is proper. *Reynolds Metals Co. v. Alperson, supra*, 25 Cal.3d 124, is instructive. In *Reynolds*, the plaintiff sued on a consignment agreement, which did not include an attorney's fee provision, and on promissory notes, which did. The action was resolved adversely to the plaintiff, and attorney's fees were awarded to the defendants. *Reynolds* concluded that the defendants could *not* recover fees incurred solely for defending causes of action based on the consignment agreement. (*Id.* at p. 129.) However, the court further reasoned that "plaintiff's joinder of causes of action should not dilute its right to attorney's fees. Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Id.* at pp. 129–130.) Expenses common to both the promissory note and the consignment agreement therefore qualified for the fee award. (*Id.* at p. 130.)

Analogously here, the fact Cassady worked for or was associated with more than one employer should not dilute his right to indemnity for costs incurred in direct consequence of the discharge of his duties at Morgan Lewis. Thus, if Cassady's counsel performed work necessary to defense of a claim or issue predicated on *both* his conduct while at Morgan Lewis and elsewhere, indemnity for those fees is appropriate. (Cf. *Reynolds Metals Co. v. Alperson, supra*, 25 Cal.3d at pp. 129–130.) Such defense costs would fall within section 2802's ambit because they would have been incurred in the defense of the Morgan-Lewis-related claims, even in the absence of the non-Morgan-Lewis-related claims.

 b. *Cassady bears the burden of proving which defense costs are attributable to his representation of Rallis while employed by Morgan Lewis.*

We likewise reject Cassady's argument that Morgan Lewis should bear the burden of apportioning defense fees between itself and other law firms. As we have observed, one of the elements of Cassady's section 2802 claim is that the expenditures or losses—here, the costs of defense of the Rallis action—were incurred in direct consequence of Cassady's discharge of his duties for Morgan Lewis. As noted, to establish this, it must be shown that the conduct defended against was within the course and scope of Cassady's employment with Morgan Lewis. (§ 2802, subd. (a); *Jacobus v. Krambo Corp., supra*, 78 Cal.App.4th at p. 1101.)

■ Evidence Code section 500 provides, "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." Under Evidence Code section 500, the plaintiff normally bears the burden of proof to establish the elements of his or her cause of action. (*Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1668 [3 Cal.Rptr.3d 279].)

In rare instances, the burden of proof set forth in Evidence Code section 500 is altered. "It is true that '[t]he general rule allocating the burden of proof applies "except as otherwise provided by law." The exception is included in recognition of the fact that the burden of proof is sometimes allocated in a manner that is at variance with the general rule.' " (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 660–661 [25 Cal.Rptr.2d 109, 863 P.2d 179].) In deciding whether to shift the normal allocation of the burden of proof, " 'the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact.' [Citation.]" (*Ibid.*; see *Sargent Fletcher, Inc. v. Able Corp., supra*, 110 Cal.App.4th at p. 1670.) However, the exceptions to Evidence Code section 500 are "few, and narrow" (*Sargent Fletcher, Inc. v. Able Corp., supra*, at p. 1670), and the normal allocation of proof has been altered only on "rare occasions" (*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.* (2003) 107 Cal.App.4th 1336, 1346 [133 Cal.Rptr.2d 207]). Shifting the burden of proof "from the plaintiff to the defendant rests on a policy judgment that there is a substantial probability the defendant has engaged in wrongdoing and the defendant's wrongdoing makes it practically impossible for the plaintiff to prove the wrongdoing." (*Id.* at p. 1346, and cases cited therein; *Sargent Fletcher, Inc. v. Able Corp., supra*, at pp. 1670–1671, and cases cited therein.)

Cassady fails to persuade us that we should alter the normal burden of proof here. The evidence necessary to establish the facts essential to Cassady's claim—i.e., what work he performed for Rallis while employed at Morgan Lewis—does not lie peculiarly within Morgan Lewis's knowledge and competence. To the contrary, the relevant evidence is primarily within Cassady's knowledge and control. (See generally *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 35–36 [130 Cal.Rptr.2d 860].) Cassady, far better than Morgan Lewis, knows what professional services he performed for Rallis during which time periods, and has better access to the relevant evidence. Morgan Lewis is especially unlikely to have ready access to information or evidence about what services Cassady performed for Rallis during periods when Cassady was not employed by Morgan Lewis.

No public policy would be served by requiring employers to indemnify for expenses attributable to an employee's conduct while working for a different employer. "It would be unfair to force an employer to pay for employee torts that are unconnected with the activities of the business. [Citation.] Forcing liability upon an employer for torts that do not arise from the enterprise contravenes the basic rationale underlying the theory of respondeat superior." (*Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, 1567 [56 Cal.Rptr.2d 333].) The "obvious purpose" of section 2802 is "to protect employees from suffering expenses in direct consequence of doing their jobs." (*Grissom v. Vons Companies, Inc., supra*, 1 Cal.App.4th at p. 60; see *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 74, fn. 24 [53 Cal.Rptr.2d 741].) Here, Rallis alleged malpractice and other claims occurring over a roughly 12-year period. Cassady was employed by Morgan Lewis for only approximately 13 months of that time. No public policy would be served by forcing Morgan Lewis to foot the bill for defense of claims arising from conduct that occurred while Cassady was not employed by the firm.

Finally, Morgan Lewis is not alleged to have engaged in wrongdoing that makes it practically impossible for Cassady to prove his claims. To the extent Cassady may find it difficult to apportion his defense costs because of a lack of detail in his attorney's billing records, that circumstance cannot be attributed to Morgan Lewis.

Cassady asserts that apportionment should be "a Morgan Lewis problem, not a Cassady problem" because "Morgan Lewis put itself in this situation by ignoring Labor Code section 2802 and refusing to defend Cassady in the first place." He argues, "Where, as here, the employer ignores its duty under section 2802 and forces the employee to defend himself, the burden of apportioning the employee's defense costs between claims arising from the employment and other claims ought to fall on the employer."

Implicit in Cassady's argument is the suggestion that certain principles applicable in the insurance law context should apply to section 2802. In the insurance context, in a "mixed" action—i.e., one in which some claims are potentially covered and others are not—an insurer has a duty to defend the *entire* action "prophylactically, as an obligation imposed by law in support of the policy." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 49 [65 Cal.Rptr.2d 366, 939 P.2d 766], fn. omitted; see *State of California v. Pacific Indemnity Co.* (1998) 63 Cal.App.4th 1535, 1546–1547 [75 Cal.Rptr.2d 69]; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2005) ¶ 7:629, p. 7B-40.1.) The insurer's duty to defend is not apportioned based on

the period of coverage. (*State of California v. Pacific Indemnity Co., supra,* at p. 1548.) When an insurer *refuses* to defend an action in which a potential for coverage exists, the insured may recover defense costs, including attorney's fees allocable to the defense of noncovered claims, unless the insurer can prove they were unreasonable or unnecessary. (*Id.* at pp. 1548–1549, 1555; see also *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 64 [70 Cal.Rptr.2d 118, 948 P.2d 909]; Croskey et al., *supra,* ¶ 7:691.15, at p. 7B-68.)

The instant situation resembles the "mixed" action scenario, in that certain aspects of the defense of the Rallis action are potentially indemnifiable, whereas other aspects—the portions of the Rallis action based upon Cassady's conduct when he was *not* employed by Morgan Lewis—are clearly not (at least not by Morgan Lewis). Despite this superficial similarity, insurance principles have no application here. " 'An insurance policy is a contract between an insurer and an insured [citations], the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss [citations].' [Citation.] The insurer's promises require it both to indemnify and to defend its insured. [Citation.]" (*State of California v. Pacific Indemnity Co., supra,* 63 Cal.App.4th at p. 1546.)

First, the record is not entirely clear as to whether or when Cassady tendered his defense to Morgan Lewis, or simply sought reimbursement of his attorney's fees after the fact. Assuming Cassady requested Morgan Lewis defend him, however, Morgan Lewis's failure to furnish defense counsel does not mean it must later indemnify Cassady for all defense costs. Section 2802 does not impose a duty to defend upon an employer. The existing caselaw on this point is contradictory. (Compare *Grissom v. Vons Companies, Inc., supra,* 1 Cal.App.4th at pp. 57–58 with *Jacobus v. Krambo Corp., supra,* 78 Cal.App.4th at p. 1100.) *Douglas v. Los Angeles Herald-Examiner, supra,* 50 Cal.App.3d at page 461, stated that section 2802 "requires an employer to defend or indemnify an employee who is sued by third persons for conduct in the course and scope of his employment." *Douglas* further reasoned that if an employer "elects to run a risk and refuses to defend and indemnify an employee who is sued as a result of acts and conduct within the scope of his employment, then the employer must bear the consequences of Labor Code section 2802 if it is established that the employee was sued as a result of acts and conduct within the scope of his employment." (*Douglas v. Los Angeles Herald-Examiner, supra,* at p. 464.) *Douglas* concluded, "when an employer refuses to defend an employee in an action which may or may not be unfounded for conduct which may or may not have been within the course

and scope of his employment and it is ultimately established that the action was unfounded and the employee acted within the course and scope of his employment, then the employer has an obligation under Labor Code section 2802 to indemnify the employee for his attorney's fees and costs in defending the action." (*Douglas, supra,* at p. 465.)

*Grissom v. Vons Companies, Inc., supra,* 1 Cal.App.4th at pages 57 through 58, explained why the statement in *Douglas* was "too broad. Section 2802 does not say that an employer must 'defend' an employee. The word 'defend' does not appear in section 2802. The statute merely requires the employer to *indemnify* the employee for all that the *employee necessarily expends* in direct consequence of the discharge of the employee's duties. The focus of the actual words of the statute is on the *employee's* expenditure. If *that* expenditure is necessarily in direct consequence of the discharge of the employee's duties, then the employer must 'indemnify' (i.e., reimburse) the employee." (*Grissom v. Vons Companies, Inc., supra,* at pp. 57–58, fn. omitted.) *Grissom* also pointed to the dictionary definition of "indemnify," which does not mean "defend." (*Id.* at p. 58, fn. 3.) An employer may obviate the need to indemnify for attorney's fees by providing counsel under some circumstances (see *id.* at p. 58), but it is not required to do so.

More recently, *Jacobus v. Krambo Corp., supra,* 78 Cal.App.4th 1096, citing *Douglas,* stated that section 2802 "requires the employer not only to pay any judgment entered against the employee for conduct arising out of his employment but also to defend an employee who is sued for such conduct." (*Jacobus v. Krambo Corp., supra,* at p. 1100; see also *Plancarte v. Guardsmark, supra,* 118 Cal.App.4th at pp. 647–648 [section 2802 "obligates the employer not only to pay any judgment entered against the employee for conduct arising out of his employment but also to defend an employee sued by a third person for such conduct"].)

On this point, we believe *Grissom* has the better view. It is certainly true, as *Douglas* reasoned, that the employer who declines to provide a defense must pay the defense costs if it is determined that the acts for which the employee was sued arose in the course and scope of employment. However, as *Grissom* reasoned, section 2802 does not expressly include a requirement to defend; it speaks only in terms of indemnification. " 'Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. [Citation.]' " (*McCrary Construction Co. v. Metal Deck Specialists, Inc.* (2005) 133 Cal.App.4th 1528, 1536 [35 Cal.Rptr.3d 624].) Defense and indemnity are distinct concepts. The

duty to indemnify requires payment of money, while the duty to defend entails the " 'rendering of a service, viz., the mounting and funding of a defense.' " (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 958 [103 Cal.Rptr.2d 672, 16 P.3d 94]; see Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 7:501.1, p. 7B-1.) Certainly, if the Legislature wished to impose a duty to defend as well as the duty to indemnify, it knew how to do so. (Compare § 2802 with Gov. Code, § 995 [expressly providing that, upon request, a public entity "shall provide for the defense of any civil action or proceeding" brought against certain public employees on account of acts or omissions in the scope of employment].) Nor is the indemnity requirement at issue here based upon a contract between the parties. (See Civ. Code, § 2778, subd. 4 [requiring that, when an indemnity contract is interpreted, a person indemnifying is bound to defend actions brought against the person indemnified in respect to the matters embraced by the indemnity, absent a showing of a contrary intent].)[7]

■ In any event, section 2802 does not transform an employer into an insurer. Even the authorities that impose a duty to defend have been careful to clarify that the duties imposed by section 2802 are not coterminous with an *insurer's* duty to defend. "Unlike an insurer, the employer need not defend whenever there is a mere potential for liability." (*Jacobus v. Krambo Corp., supra*, 78 Cal.App.4th at p. 1100; *Plancarte v. Guardsmark, supra*, 118 Cal.App.4th at p. 648 [same].) As *Douglas* explained, in a section 2802 action, "the right of recovery is derived from a statute rather than an insurance policy. Since the statutory right is based upon a state of fact (if he is sued 'in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer' etc.) it must logically follow that *if the statutorily defined state of facts does not exist then the statutory rights do not arise.*" (*Douglas v. Los Angeles Herald-Examiner, supra*, 50 Cal.App.3d at p. 464, italics added.)

Further, "There are significant differences between an insurer and an employer/indemnitor." (*Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 73 [28 Cal.Rptr.3d 124].) "Liability insurers protect insureds against damage or liability from generally defined risks in exchange for a premium. [Citation.] Insurers have a distinct and free-standing duty" to defend their insureds.

---

[7] In practice, it may make little difference in the majority of cases whether section 2802 requires the employer to furnish defense counsel or simply pay the costs of the defense. When an employee is sued for actions arising during the course of employment, the employer is often sued as well. Furnishing a defense to the employee may in some cases avoid duplication of efforts and minimize the risk of greater financial exposure later if the employee fails to present a competent defense. (See Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2005) ¶ 3:8, p. 3-3 ["Even if not obligated to do so, it is usually in the employer's interest to provide a defense where the employee is not accused of intentional wrongdoing or acts outside the scope of his or her employment"].)

(*Heppler v. J.M Peters Co.* (1999) 73 Cal.App.4th 1265, 1282 [87 Cal.Rptr.2d 497].) When an indemnity contract imposes the duty to defend, that duty is not triggered until it is determined that the proceeding against the indemnitee is embraced by the indemnity. (*Ibid.*)

Because principles applicable in the insurance context do not apply here, Morgan Lewis's failure to defend Cassady does not mandate that Morgan Lewis reimburse Cassady for attorney's fees allocable to the defense of claims premised on Cassady's conduct while employed somewhere other than Morgan Lewis.

■ In sum, we hold Cassady must prove, as an element of his section 2802 cause of action, that the attorney's fees and costs he seeks arose from the discharge of his duties while at Morgan Lewis. We next turn to the question of whether Morgan Lewis's summary judgment motion established Cassady did not possess, and could not obtain, evidence to make such a showing.

> 3. *Morgan Lewis failed to carry its initial burden on summary judgment that Cassady did not possess, and could not obtain, evidence proving that at least some of the costs of defending the Rallis action were incurred in direct consequence of the discharge of his duties.*

> a. *Summary judgment standard.*

In moving for summary judgment, a " 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 849; see Code Civ. Proc., § 437c, subd. (*o*); *Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1154–1155 [42 Cal.Rptr.3d 191].)

A defendant moving for summary judgment need not conclusively negate an element of the plaintiff's cause of action; he need only show that one or more elements cannot be established. "In other words, all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element X. Although he remains free to do so, the defendant need not himself conclusively negate any such element—for example, himself prove *not X*." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at pp. 853–854,

fns. omitted.) A defendant may show an element cannot be established by presenting evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. (*Id.* at p. 855; *Kahn v. East Side Union High School Dist., supra,* 31 Cal.4th at p. 1003; *Syngenta Crop Protection, Inc. v. Helliker, supra,* 138 Cal.App.4th at p. 1155.) Morgan Lewis could satisfy its initial burden to show an absence of evidence through "admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing" (*Aguilar v. Atlantic Richfield Co., supra,* at p. 855), or through discovery responses that are factually devoid. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590 [37 Cal.Rptr.2d 653].) Argument alone is insufficient. (*Aguilar v. Atlantic Richfield Co., supra,* at p. 855.)

In opposing a defendant's motion, the plaintiff may not rely upon the mere allegations or denials of his or her pleadings to show that a triable issue of material fact exists but, instead, "must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' " (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849.)

b. *Morgan Lewis failed to establish Cassady did not possess, and could not obtain, evidence to support his indemnity claim.*

As noted above, the trial court's ruling was based on its finding that Cassady did not possess and could not reasonably obtain evidence to establish his expenditures were necessary and incurred as a direct consequence of discharge of his duties at Morgan Lewis. Morgan Lewis's summary judgment motion attempted to make that showing primarily in two ways. First, Morgan Lewis's fact No. 14—which Cassady did not dispute—averred, "Cassady and his counsel admit that Cassady's claim against Morgan Lewis for indemnification under Labor Code section 2802 is based upon the allegations in the Rallis [a]ction." In support, Morgan Lewis offered various discovery and deposition excerpts in which Cassady affirmed that the basis for his indemnity claim was the Rallis action.[8] Relying on *Douglas v. Los*

---

[8] At his deposition, Cassady was asked for "specific acts that you are claiming occurred while you were with specific entities . . . ." Cassady's counsel replied, "He is not claiming anything. This is all about what Rallis alleges and what he alleges in this complaint. And you can read all of those file documents in the Rallis action, you can see what we made summary judgments about, the grounds for it, you can read all the deposition transcripts." Later, Cassady was asked whether he sought to recover fees for defense costs for work performed while at Hahn Cazier. Cassady replied, "we need to look at what Rallis alleged and it is defending the allegations of Rallis so that if Rallis alleged something that needed to be defended because it was an allegation against Morgan, Lewis & Bockius then it would be defended. It doesn't have to do so much or may not be limited to the conduct while I was at MLB." When asked whether he contended Morgan Lewis was responsible for defense costs relating to Cassady's conduct after he left the firm, Cassady replied, "it depends in part on what Mr. Rallis alleges. If

*Angeles Herald-Examiner, supra,* 50 Cal.App.3d 449, Morgan Lewis argues Cassady "could not establish Morgan Lewis's liability under [s]ection 2802 based solely on what Rallis *alleged* Cassady did," but instead "must show that the *actual conduct* for which he was sued was committed while employed by" Morgan Lewis.

 It is true that the allegations in a complaint do not, at trial, constitute evidence of the truth of the allegations made therein (*San Diego Police Officers Assn. v. City of San Diego* (1994) 29 Cal.App.4th 1736, 1744 & fn. 8 [35 Cal.Rptr.2d 253]), and a party cannot rely on its own pleadings as evidence to support or oppose a summary judgment motion. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849; *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7 [34 Cal.Rptr.2d 898, 882 P.2d 894].) But here, Rallis's complaint was evidence of the lawsuit Cassady was required to defend against. Whether true or not, Rallis's allegations necessarily defined the scope of the action; Cassady's defense costs arose from the necessity to defend against the allegations in the complaint. The mere fact Cassady's indemnity claim was "based upon" the allegations in the Rallis complaint therefore does not establish a lack of evidence. To the contrary, it is difficult to imagine what else the indemnity claim *could* have been "based upon." Neither the language of Morgan Lewis's undisputed fact No. 14, nor the evidence cited in support thereof, established an absence of evidence that Cassady was sued, at least in part, because of his representation of Rallis while employed at Morgan Lewis. Instead, undisputed fact No. 14 set forth the unremarkable proposition that Cassady's defense costs were necessitated by the Rallis action, and the scope of the defense was framed by Rallis's particular allegations.

Moreover, the evidence cited in support of fact No. 14 did not demonstrate the absence of evidence. One cited interrogatory called for Cassady to specify each act he contended he was sued for in the Rallis action. It is hardly surprising, therefore, that Cassady responded by referencing the Rallis complaint and summaries thereof prepared by Morgan Lewis's attorneys. Given that the interrogatory was expressly framed in terms of what the Rallis action alleged, criticism that the response referenced the complaint seems misplaced. Two of the cited deposition excerpts set forth Cassady's theory about why he should be indemnified for his representation of Rallis while employed

---

Mr. Rallis alleges that Morgan, Lewis & Bockius and I are both responsible for the conduct that occurred, some of it occurred before and some of it occurred after, but no matter when you and I might agree it occurred, in Mr. Rallis's mind we are both liable for it and I believe I am entitled to be indemnified." In a supplemental interrogatory response to a request that Cassady "[s]pecify each and every act that you contend you were sued for in the Rallis action," Cassady responded, "Cassady does not 'contend' that he was sued for one thing or another. The question is what Rallis alleged." The interrogatory then referenced several summaries of the Rallis action prepared by Morgan Lewis's counsel.

elsewhere. While Cassady's theory may have been incorrect, his responses did not demonstrate a lack of evidence that at least some of the defense expenses arose due to his rendering of professional services to Rallis while employed by Morgan Lewis. Thus, undisputed fact No. 14 and the evidence offered in support did not suffice to shift the burden to Cassady to show a triable issue.

*Douglas v. Los Angeles Herald-Examiner, supra,* 50 Cal.App.3d 449, does not compel a contrary conclusion. In that case, a newspaper reporter was sued over a series of articles he had written, allegedly using documents that had been illegally obtained. After the newspaper refused to defend the action, the reporter obtained his own counsel and later sought reimbursement of his attorney's fees and costs under section 2802. The trial court held for the newspaper. (50 Cal.App.3d at pp. 456–457.) It held that "if [the reporter] did what [the plaintiff] alleged that he did, it would have been outside the scope of his employment," and that the newspaper "had no knowledge that what [the reporter] in fact did was outside the scope of his employment." (*Id.* at p. 464.) The appellate court reversed, concluding that the trial court had failed to make a finding on a material issue of fact, and the findings made did not support the judgment. (*Id.* at p. 462.) The trial court should have made a finding regarding the truth of the reporter's allegation that the acts for which he was sued were undertaken at the direction of the newspaper. (*Id.* at pp. 457, 463.) In this context, *Douglas* reasoned that "[t]he test is not what the third person '*alleges*' but what were the facts." (*Id.* at p. 463.)

We do not read *Douglas* as standing for the principle that a defendant sued for malpractice and related claims cannot reference the allegations of the third party's complaint as relevant to a determination of the necessary scope of his defense. Instead, *Douglas* stands for the prosaic proposition that a trier of fact called upon to determine whether conduct was actually within the scope of employment must make a factual finding rather than simply treating the allegations in the third party complaint as true. The problem in *Douglas* was the trial court's finding that the facts as alleged in the third party complaint established the reporter's actions were outside the scope of his employment, whereas the evidence might have shown the contrary. That is not the problem here. Unlike in *Douglas*, in the instant matter there appears to be no dispute that Cassady's representation of Rallis, while at Morgan Lewis, was within the scope of his employment. Morgan Lewis's summary judgment motion did not offer any evidence showing Cassady did not represent Rallis, or did not represent Rallis on the matters underlying the Rallis action, while employed by Morgan Lewis.

In a further attempt to prove an absence of evidence, Morgan Lewis presented the following. When Cassady was asked at his deposition for the basis of his claim he should be indemnified for costs arising from his representation of Rallis during periods when he was employed by Hahn Cazier, Cassady responded that it was "difficult to try to cut this problem with a sharp knife" and that the parties had not "been able to do it" in prior discovery. Second, Cassady's defense counsel's time entries were not segregated by cause of action or by "which allegations [counsel] was focusing on with respect to which entity [Cassady was] with at a particular time." Third, Cassady's supplemental response to an interrogatory stated, among other things, "There is no factual basis to apportion the subject fees and costs. There is no factual basis for partial, full or comparative indemnity."

None of this evidence was sufficient to meet Morgan Lewis's summary judgment burden. As Cassady points out, the interrogatory response cited by Morgan Lewis was made in response to an interrogatory asking for facts supporting Cassady's *denial* of an allegation or affirmative defense and *related to Cassady's defense of Morgan Lewis's claim for indemnity against Cassady*. Morgan Lewis's claim for indemnity against Cassady was based in part on a contract between the parties, not section 2802. At least as presented on the record before us, the cited evidence does not establish Cassady lacked, and could not obtain, evidence on his section 2802 claim.

The other cited discovery responses suggest it may be difficult for Cassady to prove which defense costs related to his work at Morgan Lewis. They do not, however, establish Cassady cannot obtain evidence to prove at least some of the defense costs were necessary expenditures incurred in direct consequence of the discharge of his duties. (See, e.g., *Heppler v. J.M. Peters Co.,* *supra,* 73 Cal.App.4th at p. 1297 [" 'although time-keeping and billing procedures may make a requested segregation difficult, they do not, without more, make it impossible' "].) Morgan Lewis fails to consider that other methods besides an attorney's billing statements could be used in this regard. As Cassady argues, there appears to be no reason why his attorney could not testify regarding the amount of fees expended on claims or issues relating to Cassady's representation of Rallis while at Morgan Lewis. (See *Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293 [93 Cal.Rptr.2d 920] ["An attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."].) Other avenues, such as expert testimony, might also be feasible.[9] (Cf. *Buss v. Superior Court, supra,* 16 Cal.4th at p. 42 [expert retained by party determined cost of defense of one cause of action].)

---

[9] We do not mean to suggest that any particular evidence would be admissible or sufficient; those are questions for the trial court.

In short, Morgan Lewis's evidence did not foreclose the possibility of Cassady obtaining evidence.

Nor were the cited discovery responses factually inadequate. As noted above, Morgan Lewis points to no evidence in which, for example, Cassady admitted he did not perform services for Rallis, or did not work on the matters that formed the basis for Rallis's complaint, while at Morgan Lewis. Morgan Lewis's failure to ask more pointed and specific questions does not establish an absence of evidence. (*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2000) 79 Cal.App.4th 114, 136 [93 Cal.Rptr.2d 534] ["We cannot assume that all information was provided to an interrogatory that was not propounded."]; *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 80 [81 Cal.Rptr.2d 360] ["plaintiff had no duty to volunteer information that was not requested"]; see *Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 891 [134 Cal.Rptr.2d 313].)

Indeed, our review of the Rallis complaint suggests that the claims, which may and may not be indemnifiable, are not so fatally intertwined as to make apportionment impossible. For example, Rallis's second and eighth causes of action are premised entirely on conduct occurring during the period Cassady was employed by Morgan Lewis. The third and fourth causes of action, in contrast, were premised upon alleged conduct occurring at periods when Cassady was *not* employed by Morgan Lewis.[10] For the most part, Rallis alleged particular failings occurring at specified dates or periods. Thus, while it may not be easy for Cassady to prove which defense costs arose from the scope of his employment, it is clearly not impossible. In sum, Morgan Lewis has not met its burden to show Cassady cannot reasonably obtain evidence to prove the elements of his claim. Because Morgan Lewis did not meet its burden to prove no triable issue of fact existed, Morgan Lewis's summary judgment was improperly granted and the trial court correctly granted Cassady's motion for a new trial.

4. *The common law indemnity claim.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[10] Rallis's third cause of action alleged professional negligence in regard to a stock repurchase transaction occurring in September 1990. Rallis's fourth cause of action against Cassady and other defendants, but not Morgan Lewis, alleged professional negligence in regard to a proposed public offering in 1993 through 1994.

[*]See footnote, *ante*, page 220.

## DISPOSITION

The order granting a new trial is affirmed, and the matter is remanded for further proceedings consistent with the opinions expressed herein. Cassady shall recover his costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

On December 21, 2006, the opinion was modified to read as printed above.