Filed 9/3/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MATT CARTER, | C066751 |
| Cross-complainant and Appellant, | (Super. Ct. No. 07AS00377) |
| v. | |
| ENTERCOM SACRAMENTO, LLC, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Lloyd A. Phillips, Judge.  Affirmed.

Ryan and Fong, Timothy J. Ryan; Demas and Rosenthal, Steven Schultz; Gerald Glazer; Emry J. Allen for Cross-complainant and Appellant.

Pagliero & Associates, James R. Pagliero for Cross-defendant and Respondent.


As the result of drinking too much water in an ill-conceived radio contest, a woman died.  Plaintiff Matt Carter had helped conduct the contest as part of his duties as an employee of defendant Entercom Sacramento, LLC, the company that owned the radio station.  Although Entercom told Carter it would provide legal counsel for him, Carter chose to hire his own attorney.  When the woman's family sued Carter (as well as Entercom and others), Carter tendered defense of the action to Entercom's insurer.  The

1

insurer accepted the tender without any reservation of rights and appointed a different attorney to represent Carter. Carter refused that attorney and insisted on being represented by the attorney he had chosen. When the insurer refused to pay for that attorney, Carter filed a cross-complaint against Entercom seeking indemnity under Labor Code section 2802 for the fees and costs he incurred.[1] Subdivision (a) of section 2802 requires an employer to indemnify its employee "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

At the outset of the trial of Carter's indemnity claim, the trial court denied Carter's motion for leave to amend to allege a claim for quantum meruit and unjust enrichment. Thereafter, the court found that none of the fees and costs Carter incurred after the insurer appointed an attorney to represent him were *necessary* expenditures and therefore Carter was not entitled to indemnity for those fees and costs under section 2802.

On Carter's appeal, we find no error. Contrary to Carter's arguments, he did not have an absolute right to chose his own attorney to represent him at the expense of his employer or its insurer under section 2802. Nor did the fact that he faced potential liability for punitive damages and (for a time) potential criminal charges give him the right to insist that his employer or its insurer pay for the attorney he chose. Whether particular expenditures are necessary, and thereby subject to the duty of indemnity under section 2802, is a factual question, and here Carter has not shown that the trial court's determination of that question lacked substantial evidentiary support. Nor has Carter shown that is was error to deny his request to allege a claim for quantum meruit and unjust enrichment, given that Entercom had no statutory duty to indemnify him after he refused the attorney Entercom's insurer offered him. For these reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

---

[1] All further section references are to the Labor Code unless otherwise noted.

We take the initial facts from the trial court's statement of decision:

"Carter was a part-time employee of Entercom Sacramento, LLC, working as an assistant to a morning radio program. On the morning of [January] 12, 2007, the morning program conducted a contest at the station for listeners called 'Hold Your Wee for a WII.' . . . Jennifer Strange . . . was one of the participants in the contest which involved rewarding the contestant who could delay urinating the longest after drinking a large quantity of water. Strange died later that day from hyponatremia.

"Carter had been assigned by Entercom Sacramento, LLC, to assist with the contest that morning by passing out bottles of water to the contestant[s] at regular intervals and reporting the status of the contestants to the station's on-air personalities.

"On January 16, 2007, Carter, as well as a number of other employees involved in the morning radio program, were fired by Entercom Sacramento, LLC. Carter and the other terminated employees were instructed that Entercom would provide legal counsel for them. Later that week, Carter retained attorney Gerald Glazer to represent him.

"On January 17, 2007, the Sacramento County Sheriff's office announced that it was opening a criminal investigation into Strange's death. . . .

"On January 25, 2007, a complaint was filed by Strange's family naming multiple defendants, including Carter [(case No. 07AS00377)]. Carter was served with a summons and the complaint on January 29, 2007. Carter tendered the lawsuit against him to the insurer for Entercom Sacramento, LLC, Vigilant Insurance Company ('Vigilant').[2]

---

**2**    "Vigilant is a subsidiary of Chubb Insurance ('Chubb') , and communications regarding the insurance coverage at various times came from employees of Chubb or Vigilant. For purposes of this Statement of Decision, both entities are jointly referred to as 'Vigilant.' "

"Vigilant accepted Carter's tender of defense, and on February 22, 2007, wrote Carter that it was appointing Charles Painter of the law firm of Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Inc. . . . to represent Carter.

"On February 25, 2007, Glazer wrote Painter and informed him that Carter preferred to have Glazer continue to represent him. On February 27, 2007, Painter wrote Glazer and recommended to Glazer that Carter allow Painter to represent him, and that Entercom Sacramento, LLC, had in excess of $50,000,000 in insurance coverage available, and that he would be defending Carter without any reservation of rights and without any conflict whatever. Carter responded that he wanted Glazer to continue to represent him."

On April 2, 2007, the Sacramento County District Attorney announced that no criminal charges would be filed in Strange's death.

In May 2007, three other contestants, including Lucy Davidson, filed a separate action against Entercom and Carter (among others) (case No. 07AS02328).

In August 2008, Carter filed a cross-complaint against Entercom in the Strange action seeking indemnity under section 2802.[3]

In September 2008, the trial court consolidated the Strange action with the Davidson action for all purposes.

In May 2009, Vigilant informed Carter's attorney that Vigilant was settling with the Strange plaintiffs for $25,000 for each of the eight individual defendants (including Carter) and was settling with the Davidson plaintiffs for $2,500 for each individual defendant. Following that settlement, in August 2009, the Strange plaintiffs dismissed

---

[3]    Carter named both Entercom Sacramento, LLC and Entercom Communications Corp. as cross-defendants, but the trial court dismissed Carter's claims against Entercom Communications Corp. because that entity was never Carter's employer. Accordingly, we are concerned here only with Carter's claim for indemnity against Entercom Sacramento, LLC, to which we will refer as Entercom.

4

their action against Carter with prejudice and the Davidson plaintiffs dismissed their action against all defendants with prejudice.

In October 2009, a jury awarded the Strange plaintiffs more than $16 million in damages against Entercom.

In February 2010, Carter's attorneys[4] submitted a 108-page billing statement for payment by Vigilant. The statement purported to contain time entries for 1,833 hours of attorney services provided to Carter between January 2007 and September 2009. At a billing rate of $325 per hour, the fees for those services totaled $595,725. The statement also claimed $32,979.22 in costs and $178,717 for "Co-Counsel and Associate Fees." The latter figure was not supported by any time entries but instead was calculated by multiplying the 1,833 "Total Hours" previously claimed by .3, then multiplying that figure (549.9) by the previously claimed hourly rate of $325 (resulting in $178,717.50), then dropping the 50 cents to obtain a round dollar figure.

In total, Carter sought indemnity for $807,421.22 in fees and costs. This total did not include $59,572 in "Prejudgment Interest" Carter also claimed in the billing statement.

Carter's cross-complaint for indemnity against Entercom was tried to the court in April 2010 based on written offers of proof. In his trial brief, Carter requested leave to amend to include a cause of action for quantum meruit. For its part, Entercom asserted that the court should not award Carter any more than $1,690, representing the amount of attorney fees Carter incurred "between when his defense was tendered to Entercom, via

---

**4**     It is not clear exactly how many different attorneys participated in Carter's representation in the trial court in addition to Mr. Glazer, although it was several. We do note, however, that the names of four different attorneys appear on his briefs in this appeal.

Vigilant Insurance Company (February 7, 2007) and when Vigilant accepted the tender of defense, without reservation (February 12, 2007)."

At trial, the court denied Carter's motion to amend the cross-complaint to include a claim for quantum meruit and unjust enrichment. Thereafter, the court ruled on objections to the offers of proof, heard argument, and took the matter under submission.

In September 2010, the trial court issued its final statement of decision, in which it found the facts that are set forth in the quoted paragraphs above. Based on those facts, the court determined that "Carter's refusal to accept Painter as his counsel was not reasonable, and . . . therefore costs and fees incurred by Carter to defend himself were not 'necessary expenditures' " within the meaning of section 2802. The court determined that Carter *was* entitled to be indemnified for "the reasonable attorney's fees and costs incurred between January 19, 2007 and February 22, 2007," but the court also found that the reasonable hourly rate for those services was $150, not the $325 Carter claimed. Thus, the court determined that Carter was entitled to a total of $1,980 in indemnity from Entercom. The court entered judgment in that amount. Carter timely appealed from that judgment.

## DISCUSSION

The gist of the trial court's ruling here was that Carter was not entitled to indemnity under section 2802 for any attorney fees or costs he incurred after February 22, 2007, when Vigilant notified him that it had retained Painter to defend him in the Strange action.[5] Carter challenges that ruling on several grounds. He also challenges the trial court's denial of his motion to amend his cross-complaint to allege a claim for quantum

---

[5] Although the trial court found that Vigilant "wrote Carter" on February 22, what actually happened was that Vigilant wrote to *Painter* on that date, confirming that Vigilant wanted him to handle Carter's defense. Vigilant did, however, copy that letter to one of Carter's attorneys. Thus, Vigilant's February 22 letter to Painter served to notify Carter of the attorney Vigilant had chosen for him.

6

meruit and unjust enrichment. Before we turn to Carter's arguments, however, we pause to set forth some general principles regarding an employer's duty to indemnify under section 2802.

Subdivision (a) of section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

It has sometimes been said that section 2802 requires an employer to "defend" an employee who is sued by a third party for conduct in the course and scope of employment. (See, e.g., *Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 647-648.) That is not true, however. As the court explained in *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, "Section 2802 does not say that an employer must 'defend' an employee. The word 'defend' does not appear in section 2802. The statute merely requires the employer to *indemnify* the employee for all that the *employee necessarily expends* in direct consequence of the discharge of the employee's duties. The focus of the actual words of the statute is on the *employee's* expenditure. If that expenditure is necessarily in direct consequence of the discharge of the employee's duties, then the employer must 'indemnify' (i.e., reimburse) the employee." (*Grissom*, at pp. 57-58, fn. omitted; see also *Cassady v. Morgan, Lewis & Bockius LLP* (2006) 145 Cal.App.4th 220, 236 ["Section 2802 does not impose a duty to defend upon an employer"].)

Although section 2802 does not impose a *duty* to defend, the cases recognize that whether the employer nonetheless offers to defend the employee can have a bearing on the employee's right to indemnity under the statute. For example, "when an employer refuses to defend an employee in an action which may or may not be unfounded for conduct which may or may not have been within the course and scope of his employment and it is ultimately established that the action was unfounded and the employee acted

7

within the course and scope of his employment, then the employer has an obligation under Labor Code section 2802 to indemnify the employee for his attorney's fees and costs in defending the action." (*Douglas v. Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449, 465.) This is so because if the employer declines to defend the employee in such a case, the employee's expenditures on his or her own defense are considered "necessary" within the meaning of the statute and thus subject to the employer's duty to indemnify.

On the other hand, "[i]t may be . . . that an employee's expenditure of money on legal costs would be totally unnecessary if his or her employer timely provided competent counsel to defend the employee under circumstances where the counsel is not subject to any conflict of interest between the employer and employee. In such a situation, for the employee to select and then hire his or her own counsel *in addition* to counsel already being provided free of charge might, depending on all the facts involved, be a gross waste of resources and highly unreasonable." (*Grissom v. Vons Companies, Inc.*, *supra*, 1 Cal.App.4th at p. 58.) In such a case, the employee's expenditures would not be subject to the right of indemnity under section 2802 because they were not "necessary" and thus outside the employer's duty to indemnify.

I

*Counsel Of His Own Choosing*

With these principles in mind, we turn to Carter's arguments in this case. Carter first contends he had an "absolute" "right to counsel of his own choosing to defend against the Strange lawsuit, and [accordingly] a right to indemnification for fees and costs incurred by such counsel in [his] defense." Carter is mistaken.

To the extent Carter cites various cases that contain general statements about a person's right to choose his or her own attorney in a civil or criminal action, none of those cases involved the right of indemnity under section 2802 and thus they offer no assistance in determining the case before us. For example, in *Maxwell v. Superior Court*

8

(1982) 30 Cal.3d 606, our Supreme Court addressed whether a trial court erred when, notwithstanding a criminal defendant's protest, the court recused his retained attorney and appointed another attorney instead "on the ground that the fee contract, giving retained counsel the right to exploit [the defendant's] life story, created an intolerable conflict of interest." (*Id.* at p. 610.) In the course of determining that the trial court erred in recusing the defendant's retained attorney, the Supreme Court observed that "many precedents recognize that the constitutional right to counsel includes a reasonable opportunity for those defendants who have the necessary resources to control the designation of their legal representatives." (*Id.* at p. 613.) Obviously, this observation had nothing to do with the application of section 2802, and thus Carter's reliance on that observation here is unavailing.

Unlike in *Maxwell* and the other cases Carter cites in support of this argument, the question here is not whether Carter was entitled to choose his own counsel to represent him in defense of the Strange action. Obviously, Carter *did* choose his own attorney, and that attorney *did* represent him throughout the proceeding, without any interference by the trial court. The question here is whether Carter was entitled to choose his attorney *at the expense of his employer (or its insurer) under section 2802*. In other words, was Carter entitled to indemnity for the fees and costs he incurred for the attorney he chose, when his employer had arranged, through its insurer, to provide a different attorney free of charge to Carter, whom Carter rejected? That question is not answered by *Maxwell* or any of the other cases Carter cites at the outset of his argument.

That question is also not answered by rule (4) of Civil Code section 2778, on which Carter also relies to support his claim that he was absolutely entitled to indemnity for the attorney he chose, notwithstanding Vigilant's choice of another attorney. Section 2778 of the Civil Code provides that "[i]n the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears." Civil Code section 2778, rule (4) then contains the following: "The person indemnifying is bound,

9

on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so[.]"  According to Carter, "the employment agreement between [him] and Entercom was in effect an agreement to indemnify for reasonable costs of defense, by virtue of Labor Code section 2802," and therefore rule (4) of Civil Code section 2778 gave him "the right to conduct his defense" -- that is, "employ counsel of his choosing . . . and thereafter, to be indemnified for reasonable attorney's fees and costs."

Carter's reliance on Civil Code section 2778 is misplaced for at least two reasons. First, the indemnity requirement in section 2802 is a *statutory* obligation, not a *contractual* one.  (See Civ. Code, §§ 1427 ["An obligation is a legal duty, by which a person is bound to do or not to do a certain thing"], 1428 ["An obligation arises either from" "[t]he contract of the parties" "or" "[t]he operation of law"].)  Indeed, case law recognizes that the indemnity requirement in section 2802 is not contractual. (See *Cassady v. Morgan, Lewis & Bockius LLP*, *supra*, 145 Cal.App.4th at p. 238 ["Nor is the indemnity requirement at issue here based upon a contract between the parties"]; *Grissom v. Vons Companies, Inc.*, *supra*, 1 Cal.App.4th at p. 60 ["The rights [§ 2802] creates are statutory, not contractual"].)  While it is true that a contract of employment must exist for section 2802 to apply -- inasmuch as that statute applies only to an employer and an employee -- that does not mean that the obligation of indemnity imposed by section 2802 arises from "a contract of indemnity" subject to the rules of interpretation in Civil Code section 2778.  For there to be a contractual obligation of indemnity, the parties would have had to consent to that obligation.  There is no evidence they did so.  The contract on which Carter relies here is one of employment, not indemnity, and the obligation of indemnity arises only by operation of law from the terms of section 2802, without the consent of either the employer or the employee.  Thus, Civil Code section 2778 has no application here.

10

Second, even if Civil Code section 2778 *did* apply, it would not support Carter's argument that he was necessarily entitled to choose his own attorney at Entercom's (or Vigilant's) expense.  Even in the context of a contract of indemnity subject to Civil Code section 2778, it has been said that while "an indemnitee is always free to conduct his own defense despite the obligation imposed upon the indemnitor so to do," "absent some contractual privilege so to do or some showing of sufficient justification or need therefore, an indemnitee ordinarily may not refuse to join in or cooperate with the indemnitor's proffered defense and still recover his separate and redundant attorneys' fees and costs."  (*Buchalter v. Levin* (1967) 252 Cal.App.2d 367, 371.)  " '[I]f the indemnitor notifies the indemnitee that he will defend an action against the indemnitee, and does so, the indemnitee is not entitled to recover fees of his attorneys for their participation in the defense with permission of the indemnitor, where such intervention was not required by the terms of the agreement and according to the evidence was wholly voluntary and gratuitous.' "  (*Ibid.*)  Thus, even under the rules of interpretation in Civil Code section 2778, an indemnitee does not have an absolute right to conduct his own defense at the expense of the indemnitor.

In summary, we reject Carter's argument that he was absolutely entitled to be represented by counsel of his own choice at the expense of Entercom or Vigilant.

II

*Indemnity For Necessary Expenditures*

Section 2802 gives the employee the right to indemnity for "necessary expenditures," and thus the dispositive question here is whether the fees and costs Carter incurred for the attorneys he chose were "necessary" when his employer had arranged, through its insurer, to provide Carter with a different attorney at no cost to him.  To answer that question, we first take a closer look at the *Grissom* case.

In *Grissom*, a truck driver who was injured in an accident sued the individuals he contended were responsible, and he also filed a workers' compensation claim against his

11

employer (Vons). (*Grissom v. Vons Companies, Inc.*, *supra*, 1 Cal.App.4th at p. 56.) The individuals filed a cross-complaint against the truck driver, claiming he was responsible for their injuries. (*Ibid.*) The truck driver demanded that Vons defend him against the cross-complaint, and Vons hired a law firm to do so. (*Ibid.*) When the truck driver discovered that the firm representing him was also representing Vons with respect to his workers' compensation claim, he fired the firm and demanded that Vons provide him with independent counsel. (*Ibid.*) Vons refused, so the truck driver sued Vons, seeking a declaration that Vons was required to provide him with another attorney. (*Ibid.*) Vons demurred, and the trial court sustained the demurrer without leave to amend. (*Ibid.*)

The appellate court concluded the trial court erred in sustaining the demurrer because the truck driver might be able to state a cause of action for indemnity against Vons under section 2802. (*Grissom v. Vons Companies, Inc.*, *supra*, 1 Cal.App.4th at pp. 56, 59.) The court explained that while section 2802 does not impose on an employer the duty to provide a defense to an employee, the statute does give the employee the right to indemnity for necessary expenditures, and such expenditures may include the cost of independent counsel. As the *Grissom* court explained, "just because an employer selects and pays for an attorney to defend an employee does not mean that the employee might not find it reasonably necessary to select and hire additional counsel. Counsel selected by the employer may be incompetent, or, as the initial law firm selected by the employer in this case, possibly caught in a conflict of interest between the employer and the employee. Additionally, the sheer press of time may make it 'necessary' for an employee to select and hire his or her own counsel. If an employer dithers on an employee's request for counsel while time to respond to a complaint or some discovery request is running out, the employee is practically forced to go out and hire an attorney to take the appropriate action--even if the employer *later* decides to provide counsel free of charge.

"Necessity is by nature a question of fact. . . .   Accordingly, ascertaining what was a necessary expenditure will require an inquiry into what was reasonable under the circumstances.  While we can imagine some factors which have an obvious bearing on whether legal expenses incurred by an employee are necessary, the reasonableness of any given expenditure must turn on its own facts."  (*Grissom v. Vons Companies, Inc.*, *supra*, 1 Cal.App.4th at p. 58, fn. omitted.)  The factors the *Grissom* court identified as relevant to the determination of necessity were the following: "whether the employer has already agreed to provide counsel," "the competency and experience of counsel provided by the employer," "any time constraints requiring the employee to take unilateral action in selecting and hiring counsel," "the complexity and difficulty of the litigation against the employee in relation to the ability and capacity of the employer-provided counsel," "whether there are any conflicts between the employer and the employee," "the past history of the relationship between the employer and the employee," and "the nature of any problems arising in the attorney-client relationship and the reasons behind those problems."  (*Id.* at p. 58, fn. 4.)

*Grissom* provides the framework for our analysis of the remainder of Carter's arguments challenging the trial court's decision on his indemnity claim under section 2802.  The question is whether the additional expenditures for which Carter sought indemnity -- namely, the fees and costs he incurred after he rejected the attorney Vigilant had retained to represent him -- were necessary.  The trial court decided they were not, and because necessity is a question of fact, the issue for us is whether the trial court's determination that the additional expenditures were not necessary is supported by substantial evidence.  (See *Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660 ["Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below"].)

Here, Carter does not frame his arguments in terms of the sufficiency of the evidence to support the trial court's factual finding that all of his expenditures after February 22, 2007, were unnecessary. Instead, he notes the various factors identified in *Grissom* as relevant to the determination of necessity and then argues that those factors "strongly militate in favor of a conclusion that [he] acted reasonably in expending funds on counsel of his choice for purposes of defending the actions against him." In particular, Carter contends it was reasonable for him to incur fees and costs for the attorney he had chosen instead of using the attorney Vigilant hired for him because: (1) "Entercom's act of turning [his] defense over to its insurance carrier was inadequate to provide a *complete* defense to [him]" and (2) "counsel provided by the insurance carrier labored under a conflict of interest." Underlying both of these assertions is Carter's foundational premise that the attorney Vigilant retained to defend him in the Strange action could not adequately represent him because he (Carter) "faced both the prospect of *criminal charges* and *punitive damages*." Viewed in light of our standard of review, then, Carter can be understood to argue that his "need of a defense to possible felony homicide charges and punitive damages claims," which the insurance company did not offer him, essentially overrode all of the other relevant factors and required the trial court to find, as a matter of law, that the fees and costs he incurred after February 22, 2007, were reasonable and necessary.

We address the issue of punitive damages first. It is true that "public policy prohibits the payment of punitive damage awards by [an] insurer." (*Peterson v. Superior Court* (1982) 31 Cal.3d 147, 157.) Thus, even though Vigilant offered to defend Carter without a reservation of rights, Carter still faced potential exposure to a punitive damage award, which Vigilant would have been forbidden by law from indemnifying him against. In Carter's view, this potential exposure necessarily made it reasonable for him to retain an attorney other than the one Vigilant offered him. We disagree.

14

The decision of this court in *Foremost Ins. Co. v. Wilks* (1988) 206 Cal.App.3d 251 provides guidance here. In *Foremost*, the "critical issue presented" was "whether an insurer is required to furnish independent counsel selected by the insured and paid for by the insurer when the complaint against the insured seeks recovery of punitive damages as well as compensatory damages." (*Id.* at p. 254.) This court held that "the mere allegation of punitive damages and a prayer therefor does not alone create a conflict between the insured and insurer and trigger the . . . duty to provide the insured with independent counsel." (*Ibid.*) The court reasoned that there was no conflict of interest because it was in the insurer's interest "to vigorously defend the suit to avoid liability for indemnification of compensatory damages," and given the facts of the case and the coverage afforded the insured under the policy, the insurer would gain no benefit from pursuing a theory that the insured acted with the intent necessary to support an award of punitive damages. (*Id.* at p. 261.)

The same reasoning applies here. Carter points to no reason why it would have been in Vigilant's interest to pursue a theory that would have subjected Carter to an award of punitive damages, and because Vigilant was liable for any compensatory damages award against Carter, it was in Vigilant's interest, just as much as (if not more than) it was in Carter's interest, to vigorously defend against the Strange action. Under these circumstances, Carter has failed to show that the mere prospect of punitive damages prevented the attorney retained by Vigilant from providing Carter with a complete defense or created a conflict of interest that made it necessary for him to retain independent counsel.

We turn now to the potential for criminal charges. As Carter asserts, "it was undisputed that after the victim died in this case, the Sacramento County Sheriff's Department and the Sacramento County District Attorney's Office commenced criminal investigations." Carter further asserts that "[u]nder these circumstances, any reasonable person in Mr. Carter's position would want counsel to defend him against potential

15

criminal charges." That bare assertion, however, is not sufficient to persuade us that the trial court was bound, as a matter of law, to conclude that some or all of the attorney fees and costs Carter incurred after February 22, 2007, were *necessary*. On this point, it is significant to note that we have already rejected all of Carter's arguments for indemnity under section 2802 relating to his need for legal representation in the Strange civil action. Thus, the only question before us is whether there was evidence before the trial court sufficient to compel the conclusion that Carter needed to pay an attorney to represent him in connection with the pending criminal investigation.

The answer to that question is "no." Carter points to absolutely nothing in his offer of proof that has any tendency to show that he needed representation in connection with the criminal investigation. He points to no evidence of what that investigation entailed, no evidence that he was ever contacted or interviewed in the course of that investigation, and no evidence that the attorney he hired ever did a single thing connected to the criminal investigation. In fact, we have reviewed the time entries on the billing statement from the attorney's initial meeting with Carter on January 19, 2007, through April 2, 2007, when the district attorney announced that no criminal charges would be filed, and we find not a single mention of the criminal investigation.

Carter argues that the April 2 date should not be used as a cut-off because the district attorney was not bound by her announcement that she did not intend to pursue criminal charges and thus "the District Attorney's letter of April 2, 2007, did not terminate the possibility of criminal . . . liability on the part of Mr. Carter." But this argument misses the point. The question is not whether there was some iota of a possibility, however unlikely, that Carter could have been criminally prosecuted. The question is whether the attorney fees and costs Carter incurred after Vigilant offered him an attorney free of charge to defend him in the civil suit were "necessary expenditures" within the meaning of section 2802, such that Entercom was under an obligation to indemnify Carter for those expenditures. Even more specifically, the question before us

16

is whether Carter has shown that there was no substantial evidence to support the trial court's finding that those expenditures were *not* necessary and that, instead, the trial court was bound to conclude as a matter of law that at least some of those expenditures *were* necessary. Carter has not made that showing. The mere fact that a criminal investigation was ongoing for two and one-half months and that the district attorney was not absolutely barred from bringing criminal charges even after she announced that she did not intend to do so at the conclusion of that investigation does not compel the conclusion that Carter needed to spend money on an attorney, especially when there is no evidence the attorney ever had anything to do whatsoever with the criminal investigation or ever took any action relating to the potential for criminal charges against Carter.

On the record here, then, there was substantial evidence to support the trial court's determination that Carter did not need to incur fees or costs for independent counsel after February 22, 2007, when Vigilant informed him that it had retained an attorney to represent him in the Strange action, notwithstanding the fact that Carter faced a potential claim for punitive damages and that a criminal investigation continued for a little over a month thereafter. Accordingly, Carter has shown no error in the trial court's ruling on his claim for indemnity under section 2802.

All that remains is Carter's argument that the trial court erred in refusing to allow him to amend his cross-complaint on the day of trial to allege a claim for quantum meruit and unjust enrichment. This argument need not detain us long. The gist of Carter's argument is that the fees and costs he incurred "for counsel of his choosing conferred a direct benefit on Entercom and Vigilant because the contract of employment between [Carter] and Entercom created an obligation on the part of Entercom, under section 2802, to indemnify Carter for his reasonable fees and expenses in defending the Strange lawsuit. Carter undertook his defense, and was entitled to indemnification for this, yet Entercom paid nothing." Stated another way, Carter contends he had a right to recover in quantum merit the amount by which Entercom was unjustly enriched because "Entercom

17

had a statutory obligation of indemnification and paid nothing." The trial court found, however, that Entercom did not have an obligation to indemnify Carter under section 2802 for anything other than the fees he incurred through February 22, 2007, and we have upheld that finding. Because Entercom had no statutory duty to indemnify Carter any further than the trial court ordered, by Carter's own argument Entercom was not unjustly enriched by the additional services Carter's attorney provided and Carter was not entitled to recover in quantum meruit for the cost of those services. "The mere nonpayment for services 'does not constitute unjust enrichment.' " (*Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1328-1329.)

## DISPOSITION

The judgment is affirmed. Entercom shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


      ROBIE      , J.


We concur:


      HULL      , Acting P. J.


      DUARTE      , J.