[Civ. No. 17557.   Second Dist., Div. Three.   Mar. 2, 1951.]

PAT BOBYS et al., Appellants, v. RUPERT C. MESTER et al., Defendants; L. BELINKEN et al., Respondents.

Gold & Needleman for Appellants.

Charles S. Callahan for Respondents.

BARTLETT, J. pro tem.—The appellants in this action filed a complaint for declaratory relief against some of their tenants asking the court to hold that an establishment owned by them in Beverly Hills, California, had been decontrolled

or excepted from the effects of the Federal Rent Control Act of 1942 as amended by the Housing and Rent Act of 1947 [61 Stats. 193; 50 U.S.C.App. §§ 1881-1902].

In their opening brief appellants clearly and succinctly state the issues as defined by the pleadings as follows: "Appellants are the owners of 'The Adelon,' a three-story building located at 152 South Peck Drive, Beverly Hills, California, containing certain housing accommodations consisting of 30 residential units. Prior to June 30, 1947, the housing accommodations in this establishment were subject to the Federal Rent Control Act of 1942, as amended. On July 1, 1947, the Housing and Rent Act of 1947 was enacted into law by the Federal Government, which law excepted from further rent control, housing accommodations which are located in an establishment which is commonly known as a hotel in the community in which it is located, and which are occupied by persons who are provided customary hotel service.

"The material issues of fact presented by the pleadings and upon which the Court ruled and upon which this appeal is based are those contained in paragraph VI of the complaint which are denied by paragraph III of the answer are:

"1. Was 'The Adelon' on June 30, 1947, commonly known as a hotel in the community in which it is located?

"2. Was 'The Adelon' on June 30, 1947, providing customary hotel service to the persons who occupied it?"

The portion of the Housing and Rent Act of 1947 under which appellants claim their establishment had been decontrolled or excepted from the Federal Rent Control Act of 1942 was as follows: "(c) The term controlled housing accommodations means housing accommodations in any defense-rental area, except that it does not include:

"(1) those housing accommodations, in any establishment . . . which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service." (61 Stats. 196, title II, § 202, 50 U.S.C.App. § 1892.)

The court, in regard to the issues in controversy, made the following finding: "1. That on June 30th, 1947, and for a long period of time prior thereto, the Adlon Apartments was not commonly known in the community where it is located as a hotel and was not an establishment which provided for its guests the customary hotel services, but, on the contrary,

the premises is known in the community as an apartment house.''

The sole question raised by appellants in this appeal is the sufficiency of the evidence to support this finding of the trial court. ■ It is a well established rule which has been stated time and again, that all conflicts must be resolved in favor of the respondents and all legitimate and reasonable inferences indulged in to uphold the findings of a trial court. ■ No matter what conflicts exist, if there is any substantial evidence in the record which, taken in its most favorable light to the finding of the trial court, justifies that finding, then it is the duty of an appellate court to affirm the judgment based thereon. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183].)

■ Upon the issue as to whether The Adelon on the 30th day of June, 1947, was commonly known as a hotel in Beverly Hills, we find the following evidence in the record. It was listed in the telephone book for May, 1947, as follows: ''Adelon Apts.—152 South Peck Drive, Beverly Hills, Crestview 59748.'' On the premises the only indication of the name was a small plaque which said ''The Adelon.'' It was stipulated that all the linen in the premises except, possibly, sheets, was marked ''Adelon Apts.'' Several witnesses, called by the appellants, testified that the establishment was commonly known as an ''apartment-hotel.'' In direct conflict to this testimony witnesses for the defendants testified that it was known as an apartment house and referred to as ''The Adelon Apartments.''

Upon the issue as to whether or not The Adelon on that date provided customary hotel service to the persons who occupied it, testimony which we will now refer to appears in the record. There was no secretarial or desk service. The manager of the apartment house did have an apartment in the building which had a sign on the door reading ''Hours 10 to 12; 2 to 4 closed Thursday.'' Between 6 in the evening and 7 in the morning the front door of the building was locked and there was no access to the lobby unless some tenant or the manager admitted the caller by a buzzer system. There was a self-service elevator and no elevator boy. There was no switchboard in the lobby but there was a public pay telephone in the hall and it was necessary for anyone wanting to use this telephone to come to the floor upon which it was located. The result was that the tenants of 16 out of the 30 units in the building had private telephones installed. There

was no bellhop service. Tenants bought their own electric light bulbs, toilet paper and soap. One of the tenants testified that the maid service consisted of a visit each Tuesday when a woman came to the apartment, changed the bed linen, then went into the bathroom and wiped the floor. Her husband went to the kitchen and wiped the floor there and they had a vacuum cleaner with which they went around the rest of the apartment; that the whole matter did not take over 25 or 30 minutes a week. There was further testimony that the tenants washed their own windows. "No repairs were made under any circumstances." No one carried packages upstairs or downstairs for the guests. No one connected with The Adelon delivered packages to the tenants or delivered messages to them and when furniture, carpets or drapes wore out no replacements were made. This is not all of the testimony on this subject and there was a conflict as to some of the testimony which we have recited. It is sufficient to show, however, that the court had before it substantial evidence upon which to base its finding. This case is typical of those cases to which the rule of law we have set forth is applicable.

The judgment is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.