Filed 1/12/16  Sanchez v. Martinez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ALFREDO SANCHEZ et al., | C076852 |
| Plaintiffs and Appellants, | (Super. Ct. No. 39200900228305CUOESTK) |
| v. | |
| MIGUEL A. MARTINEZ, | |
| Defendant and Respondent. | |

In this case, 15 plaintiffs who worked (or claimed to have worked) for defendant Miguel A. Martinez pruning grape vines in 2009, 2010, and 2011 sought various remedies against Martinez for various alleged labor law violations.  Following a bench trial, the trial court found in favor of Martinez on all claims and entered judgment in his favor.

1

On appeal, seven of the plaintiffs[1] contend the trial court erred in numerous respects, but we find only limited merit in their arguments. As to plaintiff Tolentino, we conclude the trial court erred in finding that Martinez never employed her solely because there were no employment records for her and because Martinez and Tolentino never met. Accordingly, we will reverse the judgment in its entirety as to Tolentino and remand for further consideration of her claims.

With respect to the other six plaintiffs, we find merit only in their argument that Martinez failed to provide them with paid rest periods. Accordingly, we will reverse the judgment against them only as to their rest period cause of action and their related cause of action for civil penalties under the Labor Code Private Attorneys General Act and will affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

We will discuss the underlying facts as necessary in connection with plaintiffs' arguments below. For now, suffice it to say that in October 2009, seven plaintiffs -- including three who are still before us -- commenced this action against Martinez for various labor law violations that allegedly occurred when they worked for him pruning grape vines at a piece rate in January 2009. Ultimately, in May 2013, plaintiffs filed a third amended complaint alleging violations in 2009, 2010, and 2011. The third amended

---

[1]     The trial court entered judgment against six plaintiffs who failed to appear and testify at trial, and none of those plaintiffs have appealed. The trial court also entered judgment against three plaintiffs whom the court found were never employed by Martinez, and only one of those plaintiffs (Silvia Tolentino) has appealed. The other six plaintiffs who have also appealed are Alfredo Sanchez, Delfino Sanchez Gatica, Calixtro Miliano, Pedro Montes, Francisco Pantoja, and Rafael Villa Reyna. We will refer to the seven appellants collectively as plaintiffs.

complaint included 11 causes of action (almost all of which we address separately below).[2]

The case was tried to the court in February 2014. Following the completion of plaintiffs' case-in-chief, Martinez made a motion for judgment (erroneously denominated a motion for nonsuit). The court granted judgment against six plaintiffs who failed to appear and testify at trial and against three plaintiffs the court found never worked for Martinez (including plaintiff Tolentino). Following the presentation of the remainder of the evidence, the court found in favor of Martinez on all causes of action and entered judgment accordingly. Plaintiffs timely appealed.

## DISCUSSION

### I

### *Standard Of Review*

Our review in this case is largely, albeit not entirely, governed by the substantial evidence standard of review, as follows: "It is a well established rule which has been stated time and again, that all conflicts must be resolved in favor of the respondents and all legitimate and reasonable inferences indulged in to uphold the findings of a trial court. No matter what conflicts exist, if there is any substantial evidence in the record which, taken in its most favorable light to the finding of the trial court, justifies that finding, then it is the duty of an appellate court to affirm the judgment based thereon." (*Bobys v. Mester* (1951) 102 Cal.App.2d 583, 585.)

To the extent other standards of review may apply to particular arguments plaintiffs raise, we will address those standards at the appropriate time.

---

[2] The only cause of action as to which plaintiffs present no argument is their fourth cause of action, which alleged that Martinez failed to provide meal periods.

3

## II

### *Employment Of Plaintiff Tolentino*

Plaintiffs' third amended complaint alleged that plaintiff Tolentino worked for Martinez from approximately January 19, 2009, through January 20, 2009, and "was promised a set piece rate per grape vine . . . pruned." At trial, Tolentino's husband, plaintiff Alfredo Sanchez, testified that his wife worked on January 19 and 20 after he received permission from Martinez's father (Santiago) to bring her to work with him. Sanchez further testified that Tolentino did not complete any paperwork when she began working for Martinez, "nor was she written down in the booklets." He claimed he kept track of the grapevines his wife pruned but did not put her name on his handwritten notes because the supervisor did not want to track her work separately. She worked on the same line of vines that he did, with a space of five or 10 plants between them.

Sanchez's brother, plaintiff Delfino Sanchez Gatica, testified that he believed Tolentino worked on January 19 and 20 because "that is when women were being allowed to work for" Martinez.

Tolentino testified that she heard about employment with Martinez through her husband and she got the job after her husband called Martinez's father. She claimed she worked eight hours each day on the two days she worked, January 19 and 20; there was a supervisor present in the field; and the supervisor "did not tell her that she could not work [or] stop her from working." She claimed she did not hide from the supervisor. Tolentino testified she was never asked to fill out any forms before she started working for Martinez nor was she given any forms after she started working for him. She also admitted she did not ask for any forms because it was only two days of work. According to Tolentino, her husband gave her around $48 for the first day and about $40 for the second day.

Martinez testified that his father did not work for him but acted as a consultant. He further testified that he did not believe that Tolentino worked for him because "there

4

is no record of such person," and he was "pretty confident that she was not authorized to work" for him.

In moving for judgment, Martinez argued he never employed Tolentino because he never even knew of her and had no record of her. The trial court found there was insufficient evidence that Martinez ever employed her because there was no written record of Martinez employing her and because she admitted she had never met him. The trial court incorporated this ruling, and its reasons for the ruling, in its statement of decision.

On appeal, plaintiffs contend that undisputed facts support the conclusion that Martinez did employ Tolentino and therefore the existence of her employment status is a question of law we must review de novo. Martinez, on the other hand, contends Tolentino's employment status is a question of fact that we must review for substantial evidence, and the evidence substantially supports the finding that Martinez did not employ Tolentino. As we will explain, we do not agree with either party exactly; nonetheless, we conclude the trial court erred in ruling against Tolentino on the basis the court gave for its ruling.

We begin with the applicable standard of review. The parties agree that the question of whether Martinez employed Tolentino is a mixed question of law and fact, and the appropriate standard of review depends on whether the question, in this context, is predominantly factual or predominantly legal. "Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a

5

factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently." (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

Here, plaintiffs argue for independent review on the ground that the trial court failed to properly apply to the undisputed facts the test for determining the existence of an employment relationship. For his part, Martinez argues for substantial evidence review on the ground that the trial court applied the correct legal principles and the only question regarding Tolentino's employment status is clearly a factual one.

On this point, we agree with plaintiffs. The trial court found "there was insufficient evidence" that Martinez employed Tolentino "[s]pecifically" because "there were no written records of [her] having been employed by [him], and [she] acknowledge[d] never meeting [him]." In other words, the trial court effectively found that without any written records of Tolentino's employment and without Tolentino having met Martinez, she could not have been his employee. Under these circumstances, the question for us is not one that "requires application of experience with human affairs"; instead, it is one that "requires a critical consideration, in a factual context, of legal principles." (*Crocker National Bank v. City and County of San Francisco*, *supra*, 49 Cal.3d at p. 888.) Thus, we review de novo the question of whether the lack of employment records and/or the fact that Tolentino and Martinez never met precluded a finding that Martinez employed Tolentino.

"In actions under [Labor Code] section 1194 to recover unpaid minimum wages, the [Industrial Welfare Commission]'s wage orders . . . generally define the employment relationship, and thus who may be liable." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 52.) Here, the governing wage order is Order No. 14-2001, which appears in section 11140 of Title 8 of the California Code of Regulations. Under that wage order, " '[e]mploy' means to engage, suffer, or permit to work" and " '[e]mployer' means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent

6

or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (Cal. Code Regs., tit. 8, § 11140(2)(C) & (G).) "The [Industrial Welfare Commission] . . . borrowed its definition of 'employ'--'to engage, suffer, or permit to work'-- in 1916 from the language of early 20th-century statutes prohibiting child labor. [Citation.] Statutes so phrased were generally understood to impose liability on the proprietor of a business who knew child labor was occurring in the enterprise but failed to prevent it, despite the absence of a common law employment relationship." (*Martinez v. Combs*, *supra*, 49 Cal.4th at p. 69.) "[T]he basis of liability [under the Industrial Welfare Commission's definition of 'employ'] is the defendant's knowledge of and *failure to prevent* the work from occurring." (*Id.* at p. 70.)

Under these principles, neither the lack of employment records nor the fact that Tolentino and Martinez never met would preclude a finding that Martinez employed Tolentino. If Santiago, operating as Martinez's agent, engaged Tolentino to work for Martinez for those two days in January 2009, and she did so, then Tolentino was employed by Martinez, regardless of whether any employment records were ever generated and regardless of whether Martinez and Tolentino ever met. Similarly, if Martinez, either directly or indirectly, or through an agent or any other person -- such as one of his supervisors -- knew Tolentino was pruning grapevines along with her husband and failed to prevent her from doing so, then Martinez employed Tolentino, regardless of whether any employment records were ever generated and regardless of whether Martinez and Tolentino ever met.

For the foregoing reasons, we conclude the trial court erred in adjudicating Tolentino's claims based solely on the fact that there were no written records of her employment and the fact that she and Martinez never met. To the extent plaintiffs ask us to go further, however, and independently find as a matter of law that Martinez *did* employ Tolentino, we decline to do so. While the testimony of Tolentino, Sanchez, and Gatica (discussed above) may have been sufficient to support a finding that Martinez

7

employed Tolentino, we cannot determine on this record whether the trial court gave credence to any or all of that testimony. This is so because the trial court adjudicated Tolentino's claim against her based on the fact that no employment records were ever generated and the fact that Martinez and Tolentino never met. Having reached its decision on this basis, the trial court had no occasion to make any findings about the credibility of the testimony from Tolentino, Sanchez, and Gatica, and the court did not do so. It would be inappropriate for us to presume the trial court found these witnesses credible when Martinez challenges Tolentino's credibility and when the trial court never made a specific determination of her credibility because the basis for the court's ruling did not require the court to do so.

Accordingly, we will reverse the judgment as to plaintiff Tolentino in its entirety and remand the case to the trial court to determine, based on the existing evidentiary record, whether Martinez employed Tolentino and, if so, whether any of Tolentino's substantive claims in the case have merit.

III

*Wage Statements*

With respect to the remaining plaintiffs, we begin with their arguments regarding the wage statements Martinez provided (or did not provide) because the resolution of these arguments is relevant to their minimum wage arguments.

In their sixth cause of action, plaintiffs alleged that Martinez "knowingly and intentionally failed to provide Plaintiffs with accurate itemized wage statements for each periodic wage payment[] as required by California law." The trial court ruled in favor of Martinez on this cause of action on Martinez's motion for judgment because the trial court found "[p]laintiffs were provided itemized wage statements." On appeal, plaintiffs contend there is no substantial evidence in the record to support the conclusion that the wage statements they were provided complied with the Labor Code. They also contend

8

Martinez failed to provide all wage statements required. We find no merit in either argument.[3]

Subdivision (a) of section 226 of the Labor Code provides in pertinent part as follows: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . (2) total hours worked by the employee . . . , (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, . . . [and] (6) the inclusive dates of the period for which the employee is paid . . . ."

A

*Hours Worked*

Plaintiffs first argue that Martinez gave them "wage statements that failed to accurately show all hours worked." According to plaintiffs, they "generally worked from 7:00am to 3:00pm or 3:30pm, Monday through Saturday," and two of Martinez's supervisors "corroborated this work schedule," but the wage statements admitted in evidence "reflect a range of 3.5 to 32 hours [worked] during a workweek." The question here is whether there is any substantial evidence in the record to support the trial court's implicit finding that the wage statements correctly showed the hours plaintiffs actually

---

[3]     Plaintiffs also alleged in their wage statement cause of action that Martinez "knowingly and intentionally failed to keep and maintain accurate written records of the daily hours Plaintiffs worked . . . as required by California law." In a footnote in their opening brief they reiterate this point, asserting that "[t]he evidence . . . demonstrates a failure to . . . maintain accurate information of time records showing when the employee begins and ends each work period for at least three years." They do not argue this point further in the text of their brief, however, nor do they provide any citations to the record regarding the evidence on this point. "By raising this point in a footnote and failing to develop the argument in their opening brief, we may treat this point as forfeited." (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6.) We do so.

9

worked, notwithstanding the contrary testimony of plaintiffs and the two supervisors as to what hours plaintiffs generally worked.

There *is* evidence in the record on this point -- specifically, the testimony of Martinez's bookkeepers -- but plaintiffs have failed to accurately summarize that evidence in their opening brief. According to plaintiffs, the "bookkeepers testified that they did not recall having been provided daily records from which to prepare payroll" -- thus suggesting that the bookkeepers had *no* information from which to accurately record the hours plaintiffs worked on their wage statements. The testimony of the bookkeepers was to the contrary, however.

Hector Amilcar Radrigan, whose company (HARC Diversified Services; hereafter, HARC) provided payroll services to Martinez for the 2009 and 2010 grape pruning seasons, testified as follows: "Payroll was prepared by copying the numbers from the payroll sheets and entering them onto the computer program. He was not provided with any documents showing the number of hours a worker had worked each day to prepare payroll. . . . [P]iece rate workers usually worked 6 hours a day. He was shown [a payroll sheet] and stated that the hours were not listed on it, and he had to ask the foreman Santiago about the hours. HARC would use 6 hours because even if the workers worked 4 hours or 6 hours, they would be paid the same.[4] It would only be different if the crews worked more than a certain amount of hours for consideration of overtime. Besides Santiago, no one else from the company would tell him how many hours to write down for workers."

---

**4** Contrary to Radrigan's testimony, documents admitted into evidence showed that HARC did not always "use 6 hours" as the number of hours plaintiffs worked. For example, a wage statement for plaintiff Alfredo Sanchez for the pay period from January 8 to January 14, 2009, showed that Sanchez worked eight hours on January 12.

Adelita Patricia Lewis, who provided payroll services to Martinez for the 2011 grape pruning season through her own company (APL Services) and who also worked on Martinez's payroll prior to that time while working for HARC, testified as follows: "She does not remember storing notes or notepads from [Martinez] showing the hours worked for piece rate employees. She does not know and cannot remember having discussed notebooks with [Martinez]. . . . She could not remember if she ever used a notebook to prepare payroll checks. It was pointed out that at her deposition she testified that she did not recall [Martinez] or any of his employees turning in notebooks during the grape pruning seasons. She did not know who prepared the payroll sheets. When a worker got paid based on piece rate, she had to take notes of the hours worked or the information would be given to her by [Martinez] or Santiago or her ex-employer, Hector Radrigan."

Viewing the foregoing testimony in the light most favorable to the trial court's decision, we conclude there was substantial evidence to support the trial court's implicit finding that the wage statements accurately showed the hours plaintiffs actually worked, notwithstanding the contrary testimony of plaintiffs and the two supervisors as to what hours plaintiffs generally worked. Crediting the bookkeepers' testimony (as the trial court was entitled to do), while the bookkeepers either did not receive, or did not recall receiving, any documents from Martinez showing the number of hours plaintiffs worked, they *did* receive that information orally from Martinez or Santiago. Thus, at most plaintiffs have pointed out a conflict in the evidence on this point, and in such a circumstance we can do nothing except uphold the trial court's findings. As we have explained already, "[n]o matter what conflicts exist, if there is any substantial evidence in the record which, taken in its most favorable light to the finding of the trial court, justifies that finding, then it is the duty of an appellate court to affirm the judgment based thereon." (*Bobys v. Mester*, *supra*, 102 Cal.App.2d at p. 585.) We have no basis on which to characterize the bookkeepers' testimony on this point as insubstantial.

11

Accordingly, all we can do is uphold the trial court's implicit finding that the wage statements Martinez provided accurately showed the hours plaintiffs worked.

B

*Pieces Completed And Days Worked*

Plaintiffs next argue that "the pieces they completed did not match the information on the wage statements" and "[t]he days worked reported on their wage statements were also incorrect." In making these arguments, however, plaintiffs point only to their own testimony, and they offer no argument about why the trial court was obliged to believe that testimony. Martinez testified that he "or a foreman would write down the number of vines completed by each employee," and the payroll sheets Martinez provided to his bookkeepers showed those numbers. He further testified that while the payroll sheets were not created as the employees were working, the information on the payroll sheets was usually taken from daily notebooks.[5] From this evidence, the trial court could have believed that Martinez and his foremen contemporaneously recorded the days worked and the number of vines pruned for each employee and that this information was accurately transferred to the payroll sheets that were used to prepare the wage statements plaintiffs received. At best, plaintiffs' testimony that the number of vines pruned and the days worked were *not* accurately reflected on their wage statements created a conflict in the evidence that the trial court was entitled to resolve, and presumably did resolve, in Martinez's favor. Under these circumstances, as we have said, there is nothing we can do except uphold the trial court's findings.

---

[5] Martinez testified that he had not provided the notebooks to his attorney (presumably for production to plaintiffs in the course of the litigation) because he could not locate them.

## C

### *Wage Statements Not Provided*

Plaintiffs next argue that Martinez provided no wage statements to plaintiff Tolentino and only some wage statements to plaintiffs Francisco Pantoja and Rafael Villa Reyna. Tolentino's claims are to be resolved by the trial court in the first instance on remand, provided that court determines based on the existing evidentiary record that Martinez employed her. (See above.) As for Pantoja and Reyna, plaintiffs have failed to show that they did not receive wage statements for all the work they performed.

Plaintiffs assert that "Pantoja worked for eight pay periods from December to January at piece rate and was paid by cash and check, but did not receive wage statements when paid in cash." The evidence plaintiffs cite, however -- which is only Pantoja's own testimony -- does not support their assertion. Instead, the testimony plaintiffs cite establishes only the following: Pantoja started working as a grape pruner for Martinez around December 8, 2008. The last day he pruned grapes for Martinez was approximately February 23 or 24, 2009. In December 2008, he was paid in cash. In January 2009 he was paid some in cash and some by check. When he was paid, he received pay stubs but he did not keep them. He was paid twice with cash and the third time by check. When shown some pay stubs, Pantoja testified he was not sure they were his because he did not make as much money as shown on those pay stubs.

The foregoing evidence -- which is all the evidence plaintiffs cite on this point -- is insufficient to establish that Martinez failed to provide Pantoja with wage statements for all the work Pantoja performed for Martinez. Accordingly, plaintiffs' wage statement argument with respect to Pantoja is without merit.

The same conclusion applies to Reyna. Plaintiffs assert that he "worked for 11 pay periods from January through March and received a total of four payments with wage statements." The testimony of Reyna they cite in support of this assertion establishes only the following: Reyna started work pruning grapes for Martinez on January 3, 2011.

He received one payment for the work he did in January, a check for approximately $128 or $130. The check came with a check stub but he was not able to read and understand it. He received two payments in February. Those payments were made by check.

The foregoing evidence -- which is all the evidence plaintiffs cite on this point -- is insufficient to establish that Martinez failed to provide Reyna with wage statements for all the work Pantoja performed for Martinez. Accordingly, plaintiffs' wage statement argument with respect to Reyna is also without merit.

IV

*Minimum Wage*

In their first cause of action, plaintiffs alleged that Martinez "failed to pay [them] minimum wage, for all hours worked." The trial court found against plaintiffs on this claim as follows:

"The Court does not believe that the Plaintiffs have met their moving burden as far as minimum wage violation. There were some handwritten notes from Plaintiffs Alfredo Sanchez and Delfino Sanchez [Gatica]. However, they are inaccurate, they are incomplete. They also do not appear to be trustworthy to any significant degree. They are obviously self-serving, hearsay documents, and that does not meet the moving burden that the Plaintiffs have.

"As far as Pantoja, Montes, Miliano, and Reyna, there were no handwritten notes there, and I think even Pantoja, I think, acknowledged that he doesn't even know if he's owed any wages. But again, with the Court's calculation, minimum wages were paid, and I don't have credible evidence in front of me to dispute that part."

Plaintiffs make two arguments on appeal pertaining to their minimum wage claims. First, they contend "[t]he trial court erred as a matter of law by applying the incorrect burden of proof as to [their minimum] wage . . . claims." Second, they contend the judgment against them on their minimum wage claims "must be reversed as it is not supported by substantial evidence." We disagree on both points.

14

Under the governing wage order promulgated by the Industrial Welfare Commission, an employer must "pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (Cal. Code Regs., tit. 8, § 11140(4)(B).)

## A

### *Burden Of Proof*

Plaintiffs first argue that the trial court erred in its allocation of the burden of proof on the minimum wage issue. This argument is based on the burden-shifting rule set forth by the United States Supreme Court in *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680 [90 L.Ed. 1515], a case under the Fair Labor Standards Act of 1938 ( 29 U.S.C. § 201 et seq.).[6] In *Anderson*, the Court wrote as follows:

"An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act [citation] to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are

---

[6]　While *Anderson* specifically involved federal labor law, the burden-shifting rule announced in that case has also been applied by California courts under California law. (See, e.g., *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 726-728.)

15

untrustworthy.  It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

"When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records.  But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises.  The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.  In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." (*Anderson v. Mt. Clemens Pottery Co.*, *supra*, 328 U.S. at pp. 687-688 [90 L.Ed. at pp. 1522-1523].)

The purpose of the burden-shifting rule the Supreme Court articulated in *Anderson* is to ameliorate the harshness that an employee might otherwise suffer if (in the words of the Supreme Court) "he proves that he has in fact performed work for which he was improperly compensated" but "is unable to prove the precise extent of uncompensated work." (*Anderson v. Mt. Clemens Pottery Co.*, *supra*, 328 U.S. at p. 687 [90 L.Ed. at p. 1523].)  *Hernandez* provides a salient example of this.  In that case, the trial court agreed with the plaintiff that he had worked some overtime for which he had not been

16

properly compensated, but the court denied any recovery because the court could not "'tell from the evidence submitted how much overtime and the court is not allowed to guess.'" (*Hernandez v. Mendoza*, *supra*, 199 Cal.App.3d at pp. 724-725.) The appellate court reversed, concluding as follows: "The trial court's conclusion that appellant's offer of proof of the number of overtime hours would cause the court to guess at the amount of damages was an error of law. [Citation.] Once an employee shows that he performed work for which he was not paid, the *fact* of damage is certain; the only uncertainty is the *amount* of damage. [Citations.] In such a case, it would be a perversion of justice to deny all relief to the injured person, thereby relieving the wrongdoer from making any restitution for his wrongful act." (*Id.* at pp. 726-727.) The appellate court then went on to quote the passage we have quoted from *Anderson*. (*Hernandez*, at p. 727.)

Here, plaintiffs argue that because Martinez did not maintain daily records of the hours they worked, as required by California law, they "were entitled to proceed with a lesser standard of proof to establish their [minimum wage] claims." Thus, they contend, the trial court "improperly discounted all of [their] testimony" about the days and hours they worked and the number of grapevines they pruned. In essence, they claim that under the burden-shifting rule from *Anderson*, all they had to do was *produce some evidence* that they had not been paid minimum wage for all the hours they worked, and once they did so the burden should have shifted to Martinez to "disprove [their] estimates."

Plaintiffs misunderstand the rule set forth in *Anderson* because they confuse the concept of *producing evidence* with the concept of *proof*. The burden of producing evidence is "the obligation of a party to introduce evidence sufficient to avoid a ruling against him on [an] issue." (Evid. Code, § 110.) The burden of proof, on the other hand, is "the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." (*Id.*, § 115.) In *Anderson*, the Supreme Court recognized that in a case involving unpaid wages, the employee "has the burden of proving that he performed work for which he was not properly

17

compensated," but the court was concerned about "making that burden an impossible hurdle for the employee" by requiring the employee "to prove the precise extent of uncompensated work." (*Anderson v. Mt. Clemens Pottery Co.*, *supra*, 328 U.S. at p. 687 [90 L.Ed. at pp. 1522-1523].) Accordingly, the Supreme Court declared that "an employee has carried out his burden if he *proves* that he has in fact performed work for which he was improperly compensated and if he *produces sufficient evidence* to show the amount and extent of that work as a matter of just and reasonable inference." (*Ibid.* [90 L.Ed. at p. 1523], italics added.) At that point -- and only at that point -- "[t]he burden then shifts to the employer *to come forward with evidence* of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." (*Id.* at pp. 687-688 [90 L.Ed. at p. 1523], italics added.)

Under the rule from *Anderson*, the burden of *proof* never shifts from the plaintiff employee to the defendant employer. Instead, once the plaintiff employee carries his burden of *proving* -- persuading the trier of fact -- that he has not been properly compensated for all work performed *and* the plaintiff employee carries his burden of *producing evidence* showing the amount and extent of that work -- not precisely but only as a matter of just and reasonable inference -- then the burden of *producing evidence* shifts to the employer to offer evidence of the precise amount of work performed or evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. At *no* point does the burden of proof shift to the employer.

Moreover, nothing in *Anderson* suggests that a court, in determining whether the employee has met his initial burden of *proving* that he has in fact performed work for which he was improperly compensated, is obliged to believe whatever evidence the employee may offer on that point. Remember, *Anderson* requires the employee to do more than *produce evidence* that he performed uncompensated work; *Anderson* requires

18

the employee to *prove* -- persuade the trier of fact -- that he performed uncompensated work. If the trier of fact finds the employee's showing on that point insufficient or not worthy of credence, then the employee has not carried his initial burden, and the burden to produce contrary evidence never shifts to the employer.

Here, plaintiffs never carried their initial burden of *proving* that they performed uncompensated work because the trial court *did not believe* their testimony that they were not paid at least the minimum wage for all the hours they worked. The trial court specifically stated that the handwritten notes of Sanchez and Gatica did "not appear to be trustworthy to any significant degree," and the court did not believe it had "credible evidence in front of [it]" that Martinez did not pay plaintiffs the minimum wage. Under these circumstances, the burden-shifting rule from *Anderson* never came into play, and therefore plaintiffs have shown no error.

B

*Sufficiency Of The Evidence*

Plaintiffs next argue that there was no substantial evidence to support the trial court's decision to deny their minimum wage claims. They admit, however, that "[t]he [trial] court apparently rested [its] entire decision [on their minimum wage claims] on [its] assessment of the[ir] credibility," but they complain, in essence, that the trial court did not cite anything that would adequately "support [its] finding of a lack of credibility" on their part.

What plaintiffs fail to appreciate is that "[t]he trier of fact is the *exclusive* judge of the credibility of the witnesses" and "is free to disbelieve and reject the testimony of witnesses even though they are uncontradicted and unimpeached." (*Maslow v. Maslow* (1953) 117 Cal.App.2d 237, 243, abrogated on other grounds by *Liodas v. Sahadi* (1977) 19 Cal.3d 278.) Thus, it is simply not for us to say that the trial court erred in disbelieving plaintiffs' testimony.

19

Moreover, as we have suggested already, the rule from *Anderson* does not come into play here. Plaintiffs contend that under that rule, or some extension of it, a credibility finding like the one the trial court made here is unreasonable when that finding is based on the fact that an employee's testimony about the hours he worked is inconsistent with the employer's "legally defective records" and is supported only by some "handwritten notes" or by none at all. Nothing in *Anderson* supports this argument, however, and nothing in that opinion can be understood as constraining or limiting the power of the trier of fact as the *exclusive* judge of witness credibility. The rule in *Anderson* is that once an employee shows that he performed work for which he was not paid, it is unfair to deny the employee any recovery whatsoever just because the employee cannot prove the amount of damage with exact certainty, especially where the employer has failed to keep accurate or adequate records of the work performed. (See *Hernandez v. Mendoza*, *supra*, 199 Cal.App.3d at p. 726.) A necessary predicate to that rule is that the employee must first show that he performed work for which he was not paid. In determining whether that showing was made here, it was the trial court's job alone to assess the credibility of the witnesses, and we cannot overturn or contradict that assessment. For this reason, plaintiffs' challenge to the sufficiency of the evidence supporting the trial court's decision to deny their minimum wage claims must be rejected.

V

*Tools And Equipment*

In their second cause of action, plaintiffs alleged that Martinez "failed to provide all necessary tools and equipment, including scissors" and that, as a result, they "each had to purchase tools and equipment necessary to the performance of their job . . . and were not reimbursed for those costs." The trial court found that Martinez "made the [necessary] tools available." On appeal, plaintiffs contend there is no substantial evidence in the record to support the trial court's finding that Martinez provided them the tools necessary for the job. We disagree.

20

In pertinent part, the governing wage order provides as follows: "When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft." (Cal. Code Regs., tit. 8, § 11140(9)(B).)

The first question under this provision is what tools were "necessary to the performance of [the] job," which was pruning grapevines. Plaintiffs cite their own testimony "that necessary tools included she[a]rs, gloves, glasses, [a] file, oil and a filing stone" and that "they had to purchase replacement blades for their shears," thus suggesting that replacement blades were also necessary tools for the job. They also cite to evidence that Martinez testified at his deposition that shears, safety glasses, and gloves were all necessary. At the same time, however, they admit that Martinez testified at trial that "while she[a]rs were necessary, gloves, glasses, oil and files were not."

It is unclear exactly what tools the trial court found were necessary. On the one hand, the trial court may have found that only shears were necessary, because in finding that Martinez made the necessary tools available, the court relied "in large part" on an exhibit that showed a quote from December 2008 for the purchase of 56 cutting blades, which Martinez testified referred to shears. On the other hand, the court might have found that shears, gloves, and glasses were all necessary, because the court also relied on Martinez's testimony "that he did have tools available," and Martinez testified that he made shears, gloves, and glasses available to employees.

What is clear, however, is that the trial court implicitly found that files, oil, filing stones, and replacement blades were *not* necessary tools for the job. The first question is whether substantial evidence supports that finding, or, more to the point, whether plaintiffs have shown that there is no substantial evidence in the record to support that finding. Plaintiffs have not made that showing. Although they acknowledge Martinez's

21

trial testimony that "grape pruners only need she[a]rs to prune," they fail to explain why that testimony does not constitute the substantial evidence necessary to support the court's implicit finding that files, oil, filing stones, and replacement blades were *not* necessary tools.

Plaintiffs do assert that Martinez's "supervisors . . . testified that she[a]rs were needed and had to be sharpened and have blades replaced," thereby suggesting that there is more evidence in the record than just their own testimony that files and replacement blades were both necessary tools for the job. Even if that is so, however, it makes no difference to our review. The question for us is not whether there was substantial evidence in the record that could have supported a contrary finding by the trial court, i.e., a finding that things other than just shears (or shears, glasses, and gloves) were necessary for the job. The question for us is whether, viewing the record in the light most favorable to Martinez, there was substantial evidence in the record to support the court's implicit finding that files, oil, filing stones, or replacement blades were *not* necessary tools. Because plaintiffs have failed to offer any argument as to why Martinez's trial testimony was not sufficient to support that finding, we need not consider the issue any further.

The second question under the necessary tools regulation is whether plaintiffs have carried their burden of showing that there is no substantial evidence to support the trial court's finding that Martinez provided the tools the court found were necessary to the job. In their attempt to make that showing, plaintiffs point to their own testimony that they "were never offered tools by [Martinez]," which they complain the trial court "completely discounted." But the trial court was entitled to do just that (see *Maslow v. Maslow*, *supra*, 117 Cal.App.2d at p. 243), and it is not for us to second-guess the trial court's choice.

Plaintiffs next complain about the trial court's reliance on the exhibit that showed a quote for 56 blades in December 2008. According to them, "[t]his documentary evidence is too equivocal to be of probative value" because "[t]he record establishes that

22

[Martinez] provided grape pruning services in 2009, 2010 and 2011, and there are no records of tool purchases for these years," and "[a] single quote of related tools does not demonstrate that all tools were provided when faced by direct testimony to the contrary." In making this argument, however, plaintiffs ignore several critical factors. First, to the extent plaintiffs attempt to denigrate this evidence because it was a "quote" rather than a receipt, they ignore Martinez's testimony that the handwritten "P" in the center of the page was something he believed he wrote there to show he actually paid for the items shown. Second, plaintiffs do not point to any evidence that these tools, apparently purchased just before the 2009 season,[7] could not have been made available to Martinez's employees for all three seasons that followed their purchase. Third, plaintiffs once again ignore Martinez's own testimony that he made shears, gloves, and glasses available to employees and that his "tools were offered to anyone who wanted to use them." Contrary to plaintiffs' argument, there was more than sufficient evidence to justify the trial court's reliance on the exhibit to support the trial court's finding that Martinez provided his employees with the necessary tools.

Finally, plaintiffs take issue with the particular wording of the trial court's finding, which was that Martinez "made the tools available." According to plaintiffs, having tools "available" is materially different from "providing" them, which is what the wage order requires. In plaintiffs' view, to "provide" tools, Martinez had to "offer" the tools to his employees and let the employees refuse them. Only that, they contend, would constitute "a good faith effort to comply with the regulation."

Plaintiffs offer no authority, and not even any real argument, to support their attempt to differentiate semantically between providing a tool and making a tool

---

**7** The quote was dated December 18, 2008. Martinez testified that grape pruning takes place in January and early February. Thus, the purchase of these items appears to have occurred just before the 2009 pruning season.

available.  In any event, there is no difference.  One of the dictionary definitions of the word "provide" is "to supply or *make available* (something wanted or needed)." (Merriam-Webster's Coll. Dict. (11th ed. 2006) p. 1001, col. 2, italics added.)  Thus, by finding that Martinez "made the tools available," the trial court found that Martinez provided those tools as required by the wage order.

As an adjunct to their argument that there was no substantial evidence in the record to support the trial court's finding that Martinez provided the necessary tools, plaintiffs contend Martinez failed to reimburse them for the costs they incurred in supplying and maintaining their own tools, which they contend was a violation of Labor Code section 2802.  Subdivision (a) of that statute "requires an employer to indemnify its employee 'for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.' " (*Carter v. Entercom Sacramento, LLC* (2013) 219 Cal.App.4th 337, 341.)

The short answer to plaintiffs' argument is that the duty of indemnity in Labor Code section 2802 is limited to "necessary" expenditures, and "[w]hether particular expenditures are necessary, and thereby subject to the duty of indemnity under section 2802, is a factual question." (*Carter v. Entercom Sacramento, LLC*, *supra*, 219 Cal.App.4th at p. 341.)  Here, the trial court found that Martinez provided the necessary tools to plaintiffs, and we have concluded that that finding was supported by substantial evidence.  To the extent plaintiffs incurred expenses because they chose to use their own tools instead of those Martinez provided, it follows from the trial court's finding that the costs they incurred in acquiring and maintaining their own tools were not *necessary*, and therefore the duty of indemnity under Labor Code section 2802 never attached to those costs. (See *Carter*, at pp. 348-354 [the trial court did not err in denying indemnity to an employee for the cost of the attorney employee selected when the employer had retained a different attorney for the employee].)

24

# VI

## *Rest Periods*

In their fifth cause of action, plaintiffs alleged they "were neither provided nor authorized and permitted to take . . . rest periods" during their employment by Martinez, and Martinez "failed and refused to provide the required paid rest periods to [them]." The trial court found that plaintiffs "were at least advised constructively by way of having binders and postings" of their right to take rest periods, and plaintiffs themselves "testified that they were taking rest breaks by getting water, by going to the bathroom, and by walking to areas away from the field for lunch." The court further found that "[a] repeat theme . . . among the workers is that they chose not to take many breaks and not even all of their lunch, because they wanted to finish their line or finish their row." On this basis, the court found for Martinez on the rest period cause of action; thus, the court found that Martinez *did* permit plaintiffs to take the paid rest periods required by law.

On appeal, plaintiffs contend the trial court's findings are not supported by substantial evidence. We agree, but only in part. As we will explain, substantial evidence supports the court's finding that Martinez authorized and permitted plaintiffs to take the rest periods required by law, but there is no substantial evidence in the record that Martinez *paid* plaintiffs for those rest periods.

The governing wage order provides as follows: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from

25

wages."  (Cal. Code Regs., tit. 8, § 11140(12).)  Similar provisions appear in Labor Code section 226.7.[8]

The first question here is whether plaintiffs have carried their burden of showing that there is no substantial evidence in the record to support the trial court's finding that Martinez "authorize[d] and permit[ted]" all employees to take the rest periods to which they were entitled.  They have not.

In arguing there is no substantial evidence to support the trial court's finding, plaintiffs first point to their own testimony that:  (1) "they were not authorized and permitted to take 10-minute paid rest periods," (2) they "were never informed about their right to a rest break or given a schedule for taking breaks," and (3) they "were never . . . advised that they would be paid for the time spent while on a rest break."  They then assert that Martinez "offer[ed] no direct evidence of having advised [them] of their right to rest breaks" but instead "testified only generally [that] his business practice was to provide rest breaks to employees" and "presented testimony that his employees were on indirect notice of rest breaks through postings on billboards or binders at work locations."  In making this assertion, however, plaintiffs do not fairly characterize Martinez's

---

[8]  "(b) An employer shall not require an employee to work during a . . . rest . . . period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

"(c) If an employer fails to provide an employee a . . . rest . . . period in accordance with a state law, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the . . . rest . . . period is not provided.

"(d) A rest . . . period mandated pursuant to a state law . . . shall be counted as hours worked, for which there shall be no deduction from wages.  This subdivision is declaratory of existing law."  (Lab. Code, § 226.7.)

testimony and certainly do not view that testimony in "its most favorable light to the finding of the trial court." (*Bobys v. Mester*, *supra*, 102 Cal.App.2d at p. 585.)

In the testimony to which plaintiffs refer, Martinez testified as follows: (1) "For the 2009, 2010 and 2011 grape pruning seasons, the supervisors gave breaks and would say everyone break time"; (2) "In the 2009, 2010 and 2011 grape pruning seasons, [Martinez] or a foreman would provide the grape pruners their piece rate, start time, *break time*, quit time, where the water and bathrooms were located, and where the employment information postings were located at the field" (italics added); (3) "throughout the day, workers were allowed and able, if they wanted, to take . . . breaks," and no one was ever told they could not take a break; and (4) "informational postings in English and Spanish were on bill boards on porto-potties or binders kept at the designated areas for shade, and all employees were so informed."

Viewing Martinez's testimony in the light most favorable to the trial court's findings, as we must, we conclude that at most plaintiffs have shown a conflict in the evidence on the issue of whether they were authorized and permitted to take the required rest periods: they offered evidence that they were not and Martinez offered evidence that they were. Given that we find no basis for characterizing Martinez's evidence as insubstantial, there is absolutely nothing we can do except uphold the trial court's findings: "No matter what conflicts exist, if there is any substantial evidence in the record which, taken in its most favorable light to the finding of the trial court, justifies that finding, then it is the duty of an appellate court to affirm the judgment based thereon." (*Bobys v. Mester*, *supra*, 102 Cal.App.2d at p. 585.)

Furthermore, this court's decision in *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949 does nothing to help plaintiffs. They contend that because they "testified that they were never informed about rest breaks or advised that they would be paid for the time spent while on a rest break," Martinez effectively engaged in "business practices [that] established a disincentive against workers to take rest periods," which,

27

under *Cicairos*, was sufficient to render Martinez liable for not *permitting* plaintiffs to take the required rest breaks, even if they were *authorized* to. The flaw in plaintiffs' argument is that it relies solely on their own testimony and ignores the contrary testimony from Martinez that they *were* informed about their right to take rest periods and they *were* allowed to take them. Accordingly, the factual underpinning for this argument is entirely lacking.

Given there was substantial evidence in the record to support the trial court's finding that Martinez authorized and permitted plaintiffs to take the rest periods required by law, the question that remains is whether Martinez *paid* plaintiffs for those rest periods. In opposition to Martinez's motion for judgment, plaintiffs specifically argued that it was clear Martinez "did not pay [them] and other workers for rest periods," and they reiterated that point in closing argument. Martinez did not specifically respond to that argument, and the trial court did not expressly address it in the statement of decision. Nevertheless, because the trial court found for Martinez on the rest period cause of action, the court at least implicitly found that Martinez did pay plaintiffs for their rest periods. As we explain, however, we agree with plaintiffs that there is no substantial evidence in the record to support that implicit finding.

In *Bluford v. Safeway Inc.* (2013) 216 Cal.App.4th 864, this court held that "rest periods must be separately compensated in a piece-rate system" and "a piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law." (*Id.* at p. 872.) Here, there is no evidence plaintiffs were compensated for rest periods separately from the piece-rate compensation they received for the grapevines they pruned. Radrigan, the owner of the company that handled payroll for Martinez during the 2009 and 2010 pruning seasons, did not offer any testimony on whether plaintiffs were paid separately for rest periods. On the other hand, Lewis, the bookkeeper who handled Martinez's payroll for the 2011 pruning season, testified with reference to two wage statements that those wage statements did not show

28

any payment for other than the piece rate.  Moreover, Martinez himself testified that "[i]n the 2009, 2010 and 2011 grape pruning seasons, a grape pruner working at piece rate would not receive paid rest breaks."

On appeal, Martinez does not offer any argument on this point.  In the absence of any such argument, we agree with plaintiffs that the trial court erred in adjudicating their rest period cause of action in Martinez's favor because there is no substantial evidence in the record to support the trial court's implicit finding that Martinez authorized and permitted plaintiffs to take *paid* rest periods.  Accordingly, we will reverse the judgment against plaintiffs on their rest period cause of action and remand to the trial court to determine the damages to which plaintiffs are entitled on that cause of action.  (See *Bluford v. Safeway Inc.*, *supra*, 216 Cal.App.4th at p. 873 [where the employer did not dispute that the employees' rest periods were not separately compensated, "the only issue remaining to be decided on the rest period claim [wa]s the [employees'] damages" ].)[9]

VII

*Liquidated Damages And Waiting Time Penalties*

In their third cause of action, plaintiffs claimed the right to recover interest and liquidated damages  "in an amount equal to the minimum wages unlawfully unpaid."  In their seventh cause of action, plaintiffs claimed they were "entitled to a waiting time penalty of up to 30 days wages" because Martinez had failed to pay all wages due.  The trial court concluded that both of these causes of action were derivative of plaintiffs' minimum wage cause of action and adjudicated these causes of action against plaintiffs

---

[9]     Plaintiffs have asked us to take judicial notice of a letter from the Division of Labor Standards Enforcement and an update to the division's enforcement policies and interpretations manual, which, according to plaintiffs, "set out the [Division]'s interpretation of implementation of rest breaks as construed in Industrial Welfare Commission orders."  Because these materials are irrelevant to our decision, we deny that request.

on that basis (i.e., because plaintiffs had failed to prove that Martinez did not pay them minimum wage).

On appeal, plaintiffs contend the trial court erred in adjudicating these causes of action against them because the court erred in its adjudication of their minimum wage cause of action. We have already rejected plaintiffs' challenges to the trial court's decision on their minimum wage cause of action, however, so it necessarily follows that their arguments regarding their causes of action for liquidated damages and waiting time penalties are likewise without merit.

## VIII

### *Fair Labor Standards Act*

In their eighth cause of action, plaintiffs alleged that Martinez violated their rights under the Fair Labor Standards Act (FLSA) by failing to pay them minimum wage. The trial court concluded that this cause of action was derivative of their minimum wage cause of action under state law and adjudicated this cause of action against them because they had failed to prove their state law cause of action.

On appeal, plaintiffs contend that because the judgment should be reversed on their minimum wage cause of action under state law, it likewise should be reversed on their cause of action under the FLSA. Just as with their causes of action for liquidated damages and waiting time penalties, however, plaintiffs' challenge to the judgment against them on their FLSA cause of action is without merit because we have already rejected their challenges to the trial court's decision on their minimum wage cause of action under state law.

## IX

### *The Agricultural Worker Protection Act*

In their ninth cause of action, plaintiffs alleged Martinez violated the Agricultural Worker Protection Act (28 U.S.C. § 1801 et seq.) by (1) "providing false and misleading information regarding the terms and conditions of employment"; (2) "failing to comply

with the terms of the working arrangement"; (3) "failing to pay Plaintiffs the wages owed to them when due"; and (4) "failing to make, keep, and preserve and provide copies to each employee of [required] pay records." The trial court rejected these claims, as follows: "The Court already found in favor of [Martinez] on the sixth cause of action, the itemized wage statement, which is part of this one. Also, the Court found in favor of [Martinez] on the wages. The Court does not find misleading information regarding employment terms or working arrangements, which appears to be what that's based on. [¶] So the Court finds for [Martinez] on the ninth cause of action."

On appeal, plaintiffs contend, in essence, that because they should have prevailed on their state law minimum wage cause of action and their wage statement cause of action, they also should have prevailed on this cause of action under the Agricultural Worker Protection Act. Having determined already that plaintiffs have shown no error with respect to the former two causes of action, we must necessarily conclude they have shown no error as to the latter cause of action either.

X

*The Labor Code Private Attorneys General Act*

In their eleventh cause of action, plaintiffs alleged on behalf of themselves and other current and former employees of Martinez that Martinez violated numerous provisions of the Labor Code by: (1) failing to pay all wages due; (2) failing to provide accurate wage statements; (3) failing to maintain payroll records; (4) failing to provide rest and meal periods; and (5) failing to provide potable drinking water and adequate toilet and hand washing facilities. In this cause of action, which they asserted under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.), plaintiffs sought civil penalties for the various violations they alleged. The trial court ruled against plaintiffs on this cause of action, as follows: "Plaintiffs' claims under [the Labor Code Private Attorneys General Act] are derivative and/or require some other [cause of] action

31

in the case to have been found in favor of Plaintiffs, which the Court does not find. [¶] So the Court finds for [Martinez] as to the eleventh cause of action."

On appeal, plaintiffs contend the trial court's ruling on their cause of action under the Labor Code Private Attorneys General Act must be reversed for the same reason they contend the court's rulings on their first seven causes of action must be reversed -- because "the lower court applied improper legal standards and burdens of proof to the underlying claims" and "there is a lack of substantial evidence to support the court's findings." Having considered all of plaintiffs' underlying claims, we have found merit in only one of them: their rest period cause of action. Specifically, we have concluded the trial court erred in adjudicating the rest period cause of action in Martinez's favor because there is no substantial evidence in the record that Martinez paid plaintiffs for the rest periods to which they were entitled, in addition to the piece rate he paid them. Thus, the question is whether plaintiffs are entitled to reversal of the ruling against them on their cause of action under the Labor Code Private Attorneys General Act because of our reversal of the ruling against them on their rest period cause of action.

The answer to that question is "yes." The Labor Code Private Attorneys General Act establishes a civil penalty for the violation of any provision of the Labor Code for which a penalty is not already specifically provided. (Lab. Code, § 2699, subd. (f).) By failing to provide plaintiffs with paid rest periods, Martinez violated Labor Code section 226.7. "Because section 226.7 does not specifically provide for a civil penalty, the civil penalty for a violation of section 226.7 would be the default penalty established by section 2699, subdivision (f)." (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1134.) Accordingly, plaintiffs are entitled to proceed with their cause of action under the Labor Code Private Attorneys General Act to recover the appropriate civil penalties for Martinez's violation of Labor Code section 226.7 for failing to provide paid rest periods to his employees who were otherwise compensated at a piece rate.

32

## DISPOSITION

With respect to plaintiff Tolentino, the judgment is reversed in its entirety, and the case is remanded to the trial court for further proceedings as specified herein.

With respect to the remaining plaintiffs, the judgment is reversed as to plaintiffs' rest period cause of action and plaintiffs' cause of action under the Labor Code Private Attorneys General Act, and the case is remanded to the trial court for further proceedings on those causes of action as specified herein.

In all other respects, the judgment is affirmed.

The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)


/s/
Robie, J.


I concur:



/s/
Hull, J.

RAYE, J.

I concur in the majority opinion. I write separately only to explain my understanding of how the principles articulated in *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680, 686-688 [90 L.Ed. 1515] (*Anderson*) apply to plaintiffs' first cause of action, premised on the alleged failure of Martinez to pay plaintiffs the minimum wage.

The burden shifting contemplated by *Anderson* is not the simple burden of going forward with some evidence of work for which the employee was not properly compensated, which then triggers the employer's obligation to come forward with evidence of the precise amount of work performed by the employee. Rather, as the majority opinion observes, the employee must "prove" he or she has "performed work for which he was improperly compensated" and must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Only then does any burden shifting occur. This necessarily permits—indeed, requires—the trial court to assess the quality and weight of the evidence offered by the employee and determine whether the employee's showing is sufficient to compel the employer to provide the detailed information described in *Anderson*.

I question, however, whether the *Anderson* burden-shifting principles are needed to resolve this case. *Anderson* contemplates a two-step process: First, the employee establishes by records or testimony that uncompensated work was performed. And then, the employer must either negate the employee's showing or provide evidence of the precise amount of work performed. As the parties agreed at oral argument, the employer in this case did not wait for the employees to make the preliminary factual showing required by *Anderson*'s first step. Rather, the employer voluntarily offered into evidence its records purporting to show the precise amount of work performed by the employees, thereby rendering moot the question of whether the employees' showing was sufficient to shift to the employer the burden to go forward with contrary evidence. The trial court

1

had before it all the evidence from both sides and ruled the employees had failed to carry their burden of proof.  Therefore the question before us is simply whether the court's determination is supported by substantial evidence.  It is.  We properly affirm.

/s/
Raye, P. J.